631 F.2d 512
 Donald P. GEBBIE; Marvin A. Stille; and John M. Holmes, on
behalf of themselves and all others similarly
situated, Petitioners,
v.
UNITED STATES RAILROAD RETIREMENT BOARD, Respondent.
 No. 79-1978.
 United States Court of Appeals,
Seventh Circuit.
 Sept. 29, 1980.
 
 Gill Deford, Los Angeles, Cal., for petitioners.
 Steven A. Bartholow, Chicago, Ill., for respondent.
 Before CUMMINGS, PELL and BAUER, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 The primary issue presented by these petitions for review of a decision of the Railroad Retirement Board[1] is the eligibility of the petitioners for so-called "windfall" or "dual" benefits under the Railroad Retirement Act of 1974. This Act provides for payment of these dual benefits to certain railroaders if they are entitled to spousal benefits under the Social Security Act "as in effect on December 31, 1974." The petitioners are men whose eligibility for Social Security spousal benefits came to light in the Supreme Court's March 1977 decision striking certain Social Security dependency requirements for widower's benefits as unconstitutional. Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977).[2] On the basis of the language in the Railroad Retirement Act limiting recipients of dual benefits to those eligible under the Social Security Act "as in effect on December 31, 1974," the Board ruled that the dependency requirement was applicable to petitioners, and that the petitioners were therefore entitled to no dual benefits. The petitioners argue that the Board has erroneously interpreted the Railroad Retirement Act, or, if the Board's interpretation is correct, the requirement is unconstitutional.
 
 
 2
 Three petitions have been consolidated for the purpose of our review. The three petitioners, Donald Gebbie, Marvin Stille, and John Holmes all began to receive Social Security spousal benefits after the Supreme Court's Goldfarb decision. The Railroad Retirement benefits of each were reduced, however, by an amount corresponding to the Social Security spousal benefits. Furthermore, the Board informed each that delay in processing the reduction in Railroad Retirement benefits had resulted in the incorrect payment to the petitioners of dual benefits and that recoveries of the overpayments were necessary.
 
 
 3
 The Railroad Retirement Act of 1974 was designed to phase out the dual benefits scheme established in the predecessor Railroad Retirement Act of 1937. Under the dual benefit system established in the 1937 Act, individuals fully insured under the Railroad Retirement system and the Social Security system were entitled to benefits under both. The 1974 Act established a system to phase out this practice. Two sections of this Act set forth this phase-out plan, sections 3(m) and 3(h), 45 U.S.C. §§ 231b(m) and 231b(h). Only a brief summary of the statutory plan is necessary for an understanding of the issues: for purposes of calculating Railroad Retirement benefits, section 3(m)[3] of the 1974 Act subtracts from the worker's Railroad Retirement benefits the amount he collects each month from Social Security, thus precluding collection under both systems. Section 3(h) of the 1974 Act, however, adds back a certain amount of Social Security benefits, that is, those to which the worker would have been entitled under the Social Security Act as in effect on December 31, 1974. Section 3(h) also sets forth service-related requirements for eligibility for the dual benefits. Section 3(h) is directed at two forms of Social Security coverage. The first form of coverage is set forth in sections 3(h)(1) and (2), 45 U.S.C. §§ 231b(h)(1) and (2), and is generally referred to as "primary coverage" because it arises from a worker's own employment in a job covered by Social Security.[4] The second form of Social Security benefits covered by the section 3(h) add-back provision is generally referred to as "auxiliary coverage" because the benefits derive from the employment of a spouse in services covered by Social Security. This form of benefit is covered in sections 3(h)(3) and (4). The petitioners claim eligibility for dual coverage under section 3(h)(3), but apparently there is no dispute that both sections raise the same problems of interpretation.[5] In describing the add-back computation for auxiliary Social Security benefits, section 3(h) (3) uses the language relied on by the Board in denying benefits to the petitioners: section 3(h)(3) provides that benefits "shall be increased" by "the wife's, husband's, widow's, or widower's insurance benefit to which such individual would have been entitled, upon attaining age 65 . . . under the provisions of the Social Security Act as in effect on December 31, 1974." 45 U.S.C. § 231b(h)(3) (emphasis supplied). According to the Board, "(t) echnically, a male railroad employee who is entitled to (a Social Security spousal) benefit . . . as a result of the Goldfarb or Jablon decisions and who meets the requirements of sections 3(h)(3) and 3(h)(4) of the Railroad Retirement Act is eligible for a windfall benefit. However, the computations required under Sections 3(h)(3) and 3(h)(4) . . . would render that benefit as zero." The Board submits that the "as in effect" language requires inclusion of the dependency requirements of the Social Security Act as they existed in 1974, prior to the Goldfarb decision. The petitioners argue, and we agree that this narrow reading of the Railroad Retirement Act has no merit in light of this court's recent decision in Wright v. Califano, 603 F.2d 666 (7th Cir. 1979), cert. denied, --- U.S. ----, 100 S.Ct. 2999, --- L.Ed.2d --- (1980).
 
 
 4
 Wright was a class action filed on behalf of applicants for Social Security husband's benefits whose applications were rejected by the Secretary for not meeting the dependency requirements later declared unconstitutional in the Goldfarb line of decisions. The action sought direct review under 42 U.S.C. § 405(g) of the Secretary's eligibility determination. The action in Wright was pending before the district court at the time Goldfarb was decided. After that decision the district court certified the class action and ordered the Secretary to pay the class members the benefits they would have received had their applications originally been granted. We affirmed the decision of the district court ordering benefits to relate back before the Goldfarb decision:[6]
 
 
 5
 The Secretary's decision denying an applicant benefits under 42 U.S.C. § 402(j)(1) (the retroactive relief provision of the Social Security Act quoted in the margin) solely on the basis of 42 U.S.C. § 402(c)(1)(C) (the unconstitutional dependency requirement) is no less erroneous or subject to correction in a proceeding under 42 U.S.C. § 405(g) than a decision under 42 U.S.C. § 402(c) generally. Reversal of the Secretary's decision as to eligibility necessarily requires the award of "retroactive" relief. It is the date on which the application is filed, and not the date on which the claimant is ultimately determined to be eligible that triggers his entitlement to benefits under the Act. See, e. g., 42 U.S.C. § 402(c), (j)(1). Subject to certain exceptions that are irrelevant here, the language of (the retroactive relief) provision (42 U.S.C. § 402(j)(1)) is mandatory . . . a claimant is entitled to "retroactive" benefits for a period of up to twelve months preceding his application.
 
 
 6
 Thus, although the applicants in Wright in the literal sense were not entitled to benefits at the time of the Secretary's eligibility determination, this court nevertheless reversed the Secretary's decision, in effect reading the dependency requirements out of the Act.
 
 
 7
 Wright would appear to require us to eliminate the unconstitutional dependency provisions from the Social Security Act in determining the correctness of the Board's determination of ineligibility. There is no dispute that the wives of the petitioners were fully insured for these Social Security benefits. Indeed, the petitioners are now receiving the Social Security benefits. The Board, however, argues that the "as in effect" language of section 3(h)(3) of the Act compels continued application of the invalid dependency requirements when the benefits in question are sought under the Railroad Retirement Act instead of the Social Security Act. We are not convinced that the effect of this language is as plain as the Board submits.
 
 
 8
 The basis for the Board's proposed distinction between the Acts is the purpose of the Railroad Retirement Act of 1974 to restore the retirement fund to a financially sound position. See S.Rep. No. 93-1163, 93d Cong., 2d Sess. (1974) reprinted in (1974) U.S.Code Cong. & Admin.News, p. 5702. Particularly damaging to the integrity of the fund was the payment of dual benefits under both the Railroad Retirement system and Social Security. Id. at 5703-10. Congress therefore determined that the dual benefits system would have to be phased out, and provided for this in the 1974 Act.
 
 
 9
 In response to this argument, however, the petitioners emphasize that the financial difficulties prompted only a phasing out of dual benefits, and not their elimination. The Board's argument thus cannot stand solely on the basis that it conserves funds by denying dual benefits. The fact of the statute indicates Congress' intent that some workers continue to be entitled to these benefits. Congress decided to draw the line according to whether workers had satisfied the vesting requirements for benefits by the effective date of the Act:[7]
 
 
 10
 "(A)n employee with "vested rights" to benefits under both the Railroad Retirement Act and the Social Security Act as of a specified date . . . would receive an additional benefit amount based on his employment prior to 1975. This amount is intended to preserve an eligible employee's "right" to such dual benefits as had accrued prior to the effective date of the new Railroad Retirement Act."
 
 
 11
 Id. at 5721.
 
 
 12
 The Board argues that this class of vested beneficiaries should be narrowed further in light of Congress' intention that "a 'windfall' no longer . . . be possible except insofar as the bill expressly preserves benefits for those beneficiaries . . . whose equities entitled them thereto." (Emphasis added). Id. at 5710. According to the Board, the reference to "equities" limits the class of beneficiaries to those workers with "expectations" of benefits in 1974. The Board reasons that the petitioners could not have known in 1974 that the dependency provisions were unconstitutional and therefore that they never relied on the dual benefits they now seek.
 
 
 13
 The language of the Act does not make any distinction between classes of workers satisfying the work-related criteria for benefits based on their "expectation" of benefits. The Board, furthermore, has cited no legislative history that expressly makes this distinction according to expectations; rather, the Board merely asserts that such an intention may be inferred from the expressed desire to accord "equitable" treatment. We are convinced that the most reliable evidence of Congress' intent is the express language of section 3(h)(3) defining the work-related criteria for vesting. Certainly expectations were a consideration in according benefits. Even the Board admits, however, that many workers who were vested for benefits prior to passage of the 1974 Act, that is, certain workers who finished their working lives in non-railroad employment, lost that status under the new Act, regardless of their expectations. Congress did not make expectations the litmus test for receipt of the benefits, and the Board's interpretation cannot stand simply because it might further such a purpose.
 
 
 14
 To the extent that Congress' concern for equities reflects at all upon the otherwise clear classification of beneficiaries according to vesting, we are more inclined to think that the equities weigh in favor of workers like the petitioners who, with their wives, satisfied the service criteria for both systems and who would qualify for benefits except for the unconstitutional dependency requirement which has since been read out of the Social Security Act.
 
 
 15
 As summarized above, the Board has taken the position that the "as in effect" language sets forth the amount of the benefits, which they contend is equal to zero in this case. The petitioners agree that this language limits the amount of benefits, but add that the intended effect was to freeze the amount of Social Security component to be received by those eligible for dual benefits at 1974 levels. As the Senate Report explains, future increases in Social Security benefits would not be included in the dual benefit.[8] It is difficult for the Board to take the position that Congress intended this language to have the extraordinary effect of insulating the Social Security component of Railroad Retirement benefits against the "change" brought about by Goldfarb, for an unconstitutional law is "in legal contemplation, as inoperative as though it had never passed." Norton v. Shelby County, 118 U.S. 425, 442, 6 S.Ct. 1121, 1125, 30 L.Ed. 178 (1886). See Cash v. Califano, 621 F.2d 626 (1980) (applying Goldfarb retroactively: "(j)udicial declaration of law is merely a statement of what the law has always been.").
 
 
 16
 The Board applied an erroneous reading of the 1974 Act in reaching its decision. Accordingly, the decision of the Board denying petitioners' dual benefits is reversed.[9]
 
 
 
 [1]
 This court has jurisdiction to review these decisions under 45 U.S.C. §§ 231g and 355(f)
 
 
 [2]
 During the same month, the Supreme Court also affirmed summarily three district court decisions invalidating certain dependency provisions for Social Security husband's benefits. Califano v. Silbowitz, 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977), aff'g, 397 F.Supp. 862 (S.D.Fla.1975); Califano v. Jablon, 430 U.S. 924, 97 S.Ct. 1539, 57 L.Ed.2d 768 (1977), aff'g, 399 F.Supp. 118 (D.Md.1975); Califano v. Abbott, 430 U.S. 924, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977), aff'g, Civ. No. C-74-194 (N.D.Ohio Feb. 11, 1976)
 
 
 [3]
 Section 3(m) of the Act provides:
 The annuity of any individual under subsection (a) of this section for any month shall be reduced, but not below zero, by the amount of any monthly benefit payable to that individual for that month under title II of the Social Security Act.
 45 U.S.C. § 231b(m).
 
 
 [4]
 Marvin Stille, for example, worked in a job covered by Social Security until 1973, after his retirement from railroad service in 1966. Thus, he collected at least a portion of the dual benefits to which he claims entitlement, that is, primary Social Security benefits under section 3(h)(1)
 
 
 [5]
 Section 3(h)(3) provides:
 The amount of the annuity provided under subsections (a) through (d) of this section of an individual who (A) will have (i) rendered service as an employee to an employer, or as an employee representative, during the calendar year 1974, or (ii) had a current connection with the railroad industry on December 31, 1974, or at the time his annuity under section 231a(a)(1) of this title began to accrue, or (iii) completed twenty-five years of service prior to January 1, 1975, and (B) will have completed ten years of service prior to January 1, 1975, and is the wife, husband, widow, or widower of a person who will have been permanently insured under the Social Security Act on December 31, 1974, shall be increased by an amount equal to the smaller of (C) the wife's, husband's, widow's, or widower's insurance benefit to which such individual would have been entitled, upon attaining age 65 (or, if later, for January 1975), under the provisions of the Social Security Act as in effect on December 31, 1974, on the basis of such person's wages and self-employment income derived from employment and self-employment under that Act prior to January 1, 1975, or (D) the primary insurance amount to which such individual would have been entitled upon attaining age 65 (or, if later, for January 1975), under the provisions of the Social Security Act as in effect on December 31, 1974, on the basis of such individual's wages and self-employment income derived from employment and self-employment under that Act prior to January 1, 1975, and on the basis of compensation derived from service as an employee after December 31, 1936, and prior to January 1, 1975, if such service as an employee had been included in the term "employment" as defined in that Act.
 
 
 [6]
 The "retroactive relief" provision of the Social Security Act, 42 U.S.C. § 402(j)(1), in fact contains language that would seem to provide an analogous argument against applying Goldfarb to applications filed before that decision. Section 402(j)(1) provides in part:
 An individual who would have been entitled to a benefit under subsections (a) to (g) or (h) of this section for any month after August 1950 had he filed application therefor prior to the end of such month shall be entitled to such benefit for such month if he files application therefor prior to the end of the twelfth month immediately succeeding such month.
 (Emphasis supplied.) See 603 F.2d at 672.
 
 
 [7]
 The vesting requirements for the Social Security component of dual benefits are described as follows in the Act:
 For purposes of this subchapter, a person shall be considered to be permanently insured under the Social Security Act on December 31, 1974, if he or she would be fully insured within the meaning of section 214(a) of that Act when he or she attains age 62 solely on the basis on his or her quarters of coverage under that Act acquired prior to January 1, 1975.
 45 U.S.C. § 231(r).
 The vesting requirements for the dual benefits provision appear in section 3(h)(3) quoted in note 5 supra.
 
 
 [8]
 See id. at 5711, 5719 n.1, 5724
 
 
 [9]
 Before oral argument, the petitioners moved that this court certify this action, on appeal from the Board, as a class action because of an asserted lack of any forum for adjudication on a class-wide basis of their statutory claims. By an order dated October 17, 1979, this motion was denied. We have considered the petitioners' arguments in favor of reconsideration of this ruling, and, although the Board has not assisted the court with briefs on this issue, we have concluded that this court is not an appropriate forum for such an action