Clinton T. **FROCK** and Charles L. **Stribling, Petitioners,**

v.

**UNITED STATES RAILROAD RETIREMENT BOARD, Respondent.**

Nos. 81–2187, 81–2637.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1982.

Decided Aug. 6, 1982.

Newton G. McCoy, Friedman, Weitzman & Friedman, P.C., St. Louis, Mo., Gill De-Ford, Los Angeles, Cal., for petitioners.

Thomas W. Sadler, U. S. R. R. Retirement Bd., Chicago, Ill., for respondent.

Before SPRECHER * and BAUER, Circuit Judges, and BONSAL **, Senior District Judge.

BAUER, Circuit Judge.

These petitions involve the applicability of section 3(h)(6) of the Railroad Retirement Act, 45 U.S.C. § 231b(h)(6), to railroad workers applying for dual benefits fol-

---

* Circuit Judge Robert A. Sprecher heard oral argument, participated in the conference which followed, and voted to affirm. He died May 15, 1982, and did not participate in the preparation or approval of this opinion.

** Honorable Dudley B. Bonsal, Senior District Judge for the Southern District of New York, is sitting by designation.

lowing this court's decision in *Gebbie v. United States Railroad Retirement Board*, 631 F.2d 512 (7th Cir. 1980), and the constitutionality of that section if it is applied to these workers. Because we find that section 3(h)(6) was correctly applied and is constitutional, we uphold the Railroad Retirement Board's decisions denying dual benefits to the petitioners.

## I

Clinton T. Frock and Charles L. Stribling (collectively "petitioners") are retired railroad workers entitled to annuities under the Railroad Retirement Act of 1974, 45 U.S.C. § 231 *et seq.* ("RRA"). Both men are married to spouses who were fully insured under the Social Security Act, 42 U.S.C. § 301 *et seq.*, prior to January 1, 1975. Social security benefits and railroad retirement annuities are distributed to railroad workers and their families by the Railroad Retirement Board ("Board"). 45 U.S.C. § 231f(b)(2).

In 1977, Frock and Stribling became eligible to receive spousal social security benefits as a result of the Supreme Court's decision in *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). There the Court held that a provision in the Social Security Act requiring husbands, but not wives, to prove dependency on their insured spouse in order to receive spousal social security benefits violated the Fifth Amendment. In response to *Goldfarb*, the Board provided all workers with spousal social security benefits. At the same time, however, the Board reduced the railroad annuity benefits of the workers by an amount equal to their spousal social security benefits. This action was based on 45 U.S.C. § 231b(m), which precludes "dual" or "windfall" benefits to retired railroad work-

ers; the Board considered the receipt of both a railroad retirement annuity and spousal social security benefits to constitute such "dual" or "windfall" benefits.[1] The Board then read 45 U.S.C. §§ 231b(h)(3) and (4) to mandate the restoration of dual benefits to female railroad retirees and male railroad retirees able to prove dependency upon their wives. Under those sections, persons whose spouses were "permanently insured under the Social Security Act on December 31, 1974" were to receive an increase in annuity benefits equal to the social security benefits to which they "would have been entitled ... under the provisions of the Social Security Act as in effect on December 31, 1974." Thus, those who were entitled to dual benefits in 1974 would still be entitled to them. The Board interpreted "as in effect on December 31, 1974" to mean that eligibility for dual benefits was to be based on social security eligibility standards in effect before the Supreme Court's 1977 *Goldfarb* decision.

This court, in *Gebbie v. United States Railroad Retirement Board*, 631 F.2d 512 (7th Cir. 1980), held that the Board's interpretation of this eligibility standard was incorrect. Although not reaching any constitutional issues, we found that it was improper to read 45 U.S.C. §§ 231b(h)(3) and (4) as evincing a design to base receipt of dual benefits upon the dependency requirements invalidated in *Goldfarb*. We declined, however, to certify a class in *Gebbie*, so that only the petitioner there became entitled to collect dual benefits.

Following *Gebbie*, Frock sent a letter to the Board on February 27, 1981, requesting dual benefits in light of that decision. Frock had been denied the benefits in 1977. On March 18, 1981, the Board sent Frock a letter in which it refused to reopen his administrative claim on the basis that Frock

---

1. 45 U.S.C. § 231b(m) provides:

    The annuity of any individual under subsection (a) of this section for any month shall ... be reduced, but not below zero, by the amount of any monthly benefit ... payable to that individual for that month under title II of the Social Security Act [pertaining to federal old-age, survivor, and disability insurance benefits].

Spousal social security benefits are "windfall benefits" when disbursed to railroad retirement annuity recipients because railroad retirement annuities are already subsidized by Social Security Act funds. S.Rep.No.93–1163, 93d Cong., 2d Sess. 2–3, *reprinted in* [1974] U.S.Code Cong. & Ad.News 5702, 5708.

had failed to file a timely administrative complaint after the 1977 denial of benefits. *See* 45 U.S.C. § 231g. Frock then filed a Petition for Review with this court on July 27, 1981.

Stribling had filed a timely objection when he was denied dual benefits in 1978, and was pursuing his administrative remedies at the time of the *Gebbie* decision. One year after *Gebbie*, however, by a letter dated July 27, 1981, Stribling was notified that his appeal had been denied. The Board's letter stated that it had declined to apply *Gebbie* to any other cases. Having exhausted his administrative remedies, Stribling filed his Petition for Review with this court on October 15, 1981.[2]

While Frock's petition was pending before this court, and shortly after the Board's final disposition of Stribling's claim, Congress added section 3(h)(6) to the RRA.[3] This section eliminated dual benefits for anyone whose entitlement to those benefits had not been "determined" by August 13, 1981. Section 3(h)(6) forms the basis of the dispute in this case. The Board asserts that this provision bars the claims at issue here, because in neither case has the petitioner been determined by a court or by the Board to be entitled to dual benefits. The petitioners argue that the provision does not apply to them because their positions are indistinguishable from that of the plaintiff in *Gebbie*, and therefore that *Gebbie* determined their entitlement to dual benefits. In the alternative, they argue that section 3(h)(6) is unconstitutional.

## II

Initially, we face a jurisdictional question. Although the Board concedes that Stribling's claim is properly before this court, the Board argues that this court lacks jurisdiction over Frock's claim because of

Frock's failure to exhaust his administrative remedies and his lack of timeliness in filing a claim. We reject both these contentions, and find that Frock has properly invoked this court's jurisdiction.

██ The Board contends that, despite the fact that the Board unequivocally denied dual benefits to Frock, he was nevertheless required to pursue his administrative remedies before bringing this action. Under the regulations in effect when Frock's annuity benefits were first reduced, Frock was authorized to appeal any adverse decision by the Board through an extensive administrative appeals system. 20 C.F.R. §§ 260.2, 260.3 (1977). Failure to file a final administrative appeal forfeited any right to further review of the decision. 20 C.F.R. § 260.3(c) (1977). These regulations continue in effect today. 20 C.F.R. §§ 260.4, 260.6 (1982). Finally, section 8 of the RRA provides for court review of Board decisions "only after all administrative remedies within the Board will have been availed of and exhausted." 45 U.S.C. § 231g (incorporating section 5(f) of the Railroad Unemployment Insurance Act, 45 U.S.C. § 355(f)). Frock, however, did not begin to seek review of the Board's denial of dual benefits to him until 1981, and that administrative process has never been completed. Thus, the Board argues, this court lacks jurisdiction over Frock's claim because Frock has failed to exhaust his administrative remedies.

We disagree. First, Frock's case falls within an exception to the general exhaustion rule for cases in which exhaustion would have been "a futile gesture." *Porter County Chapter of Izaak Walton League of America, Inc. v. Costle*, 571 F.2d 359, 363 (7th Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978). Here, the Board clearly indicated in a letter to Mr. Frock's

---

**2.** Under 45 U.S.C. § 231g, decisions of the Board are subject to court review as provided under the Railroad Unemployment Insurance Act, 45 U.S.C. § 351 *et seq.* That Act permits petitioners to file suit in the court of appeals for the circuit in which they reside, in the District of Columbia Circuit, or in the Seventh Circuit. 45 U.S.C. § 355(f).

**3.** 45 U.S.C. § 231b(h)(6). This section provides:

    No amount shall be payable to an individual under subdivision (3) or (4) of this subsection unless the entitlement of such individual to such amount had been determined prior to August 13, 1981.

counsel that "[t]he Board is not applying the decision in the *Gebbie* case on a class basis," meaning that the Board did not consider anyone in Frock's position to be entitled to dual benefits under 45 U.S.C. §§ 231b(h)(3) and (4). Under such circumstances, pursuing administrative "remedies" would indeed have been a futile gesture.

Furthermore, courts have not required parties to exhaust administrative remedies where the purposes of exhaustion would not be served. "The basic purpose of the exhaustion doctrine is to allow the administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Continental Can Co. v. Marshall*, 603 F.2d 590, 597 (7th Cir. 1979). *Accord, Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). None of these purposes would be served by requiring exhaustion here. There is no need for development of a factual record, for the facts are not in dispute. No application of agency expertise is involved, and a formal decision by the Board not to follow *Gebbie* effectively precludes the Board from mooting the controversy.[4]

█ The Board argues, however, that even if Frock was not required to exhaust his administrative remedies, this court still lacks jurisdiction because Frock failed to protest the Board's action within the statutorily required time period. The Board argues that, under 45 U.S.C. § 231g, Frock was required to object to the reduction of his annuity within one year of the date it was reduced. Thus, the Board argues, Frock's failure to protest his annuity reduction within one year of September 1977, the date the Board decided to reduce his annuity, precludes any further review of the Board's actions.

Once again, we disagree. At the very least, Frock is entitled to bring this action as an appeal from the Board's refusal to reinstate his annuity benefits after *Gebbie*. Frock's letter of February 27, 1981, requested reinstatement of his reduced annuity, which the Board permits pursuant to 20 C.F.R. § 200.1(vi) (1981). When the Board, by its letter of March 18, 1981, refused to reinstate Frock's benefits, Frock timely filed his Petition for Review with this court. Thus, Frock's case is properly before this court.[5]

## III

### A

█ Frock and Stribling claim that this court's decision in *Gebbie v. United States Railroad Retirement Board*, 631 F.2d 512 (7th Cir. 1980), established their right to dual benefits. They argue, therefore, that section 3(h)(6), which prohibits dual payments "to an individual . . . unless the entitlement of such individual to such amount" was determined before August 13, 1981, simply does not apply to them.

Section 3(h)(6) specifically precludes dual benefits unless an *individual* has been determined to be eligible by the date of enactment. Such language clearly contemplates a specific determination of entitlement.[6]

---

4. Although it is conceivable that Frock could persuade the Board to change its policy, we believe that to require exhaustion in the face of a clearly contrary Board decision would be a waste of administrative resources. *See Weinberger v. Salfi*, 422 U.S. 749, 765–66, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522 (1975); *Continental Can Co. v. Marshall*, 603 F.2d 590, 596–97 (7th Cir. 1979).

5. Because of the decision we reach herein, we need not address the more difficult question raised by Frock of whether the Board's initial letters provided sufficiently clear notice of the reasons for terminating his annuity.

6. This meaning is clear from the discussion of the section in the Report of the Conference Committee on the Budget Reconciliation Act. In explaining the Senate version of section 1118(e), which was ultimately adopted by Congress as section 3(h)(6), the Committee explained:

> The Senate amendment addressed the *Gebbie* issue by providing that no new windfalls would be payable in connection with annuities awarded after May, 1981, or the enactment date, to any employee based on a

Neither Frock nor Stribling had received such a determination by August 13, 1981, and therefore section 3(h)(6) does indeed operate to block dual benefits for them.

Frock and Stribling appear to read *Gebbie* as a class action, determining the rights of all those similarly situated. Yet this court specifically declined to certify a class in *Gebbie* on the ground that this court was "not an appropriate forum for such an action." 631 F.2d at 516 n.9. Thus, *Gebbie* decided only the entitlement of the individual petitioner in that case.[7]

Frock and Stribling, however, place great weight upon the fact that the Board did not appeal the *Gebbie* decision. The failure to do so, they allege, bound the Board to apply *Gebbie* in all cases. An unappealed circuit court decision concerning agency action, however, does not have the effect of setting a nationwide agency standard. Federal appellate courts can, and do, differ in their conclusions as to the law affecting agency action. *See Davis v. Califano*, 603 F.2d 618, 627–28 (7th Cir. 1979) (differing with Second Circuit's opinion in *Rosenberg v. Richardson*, 538 F.2d 487, 490 (2d Cir. 1976), as to entitlement to certain types of social security benefits). Due to the nature of the statutory grant of jurisdiction in this case, a petitioner could bring an action in any one of three circuits.[8] To find that this circuit's determination governed the Board's actions in all other circuits would be to make this circuit the ultimate decisionmaker simply because it was the first court presented with the issue.[9] We do not believe that the Board's decision not to appeal *Gebbie* dictates such a conclusion. We are unaware of any decision requiring an agency to either appeal a circuit court's holding or accept it as binding on the agency in all circuits where review could have been sought. Thus, the scope of this court's *Gebbie* decision was necessarily limited to the rights of the litigant in that case, and the agency was bound to comply with this court's decision only with regard to that litigant.

**B**

Having found that section 3(h)(6) was properly applied to Frock and Stribling, we reach the petitioners' constitutional challenge that the statute violates the Fifth Amendment guarantees of due process and equal protection.[10] First, Frock and Stribling contend that the statute violates due process by conditioning receipt of dual benefits upon an external occurrence unrelated to eligibility—certification of entitlement

---

spouse's Social Security Act employment. The intent of the provision "unless entitlement of such individual to such amount had been determined prior [*sic*] the date of the enactment of this subdivision" is to cut off windfall awards in all cases where the processing has, *for whatever reason*, not been completed and the determinations have not been made.

H.R.REP.No.97–208, 97th Cong., 1st Sess. 863, *reprinted in* [1981] U.S.CODE CONG. & AD.NEWS 1010, 1225 (emphasis added).

7. Thus, in order to reap the benefits of the *Gebbie* decision, workers had to bring either individual or class actions. One individual did appear before this court, where his entitlement to dual benefits was determined, *Shuff v. United States Railroad Retirement Board*, No. 80–2791 (7th Cir. Apr. 9, 1981) (unpublished order), and a class action is pending before the district court, *Forseth v. United States Railroad Retirement Board*, No. 81–C–3742 (N.D.Ill.).

8. *See* note 2, *supra*.

9. Because petitioners could appeal Board decisions in any one of three circuits, the Board had no way of determining which circuit would ultimately review its decision in any individual case. Thus, the nature of the jurisdictional grant under the RRA serves to distinguish this case from those in which lower courts have imposed a duty upon agencies to apply the rulings of the court to all cases within that court's geographic jurisdiction. *See, e.g., Flores v. Secretary of Health, Education & Welfare*, 228 F.Supp. 877, 878 (D.P.R.1964) (decision of a particular court must be obeyed by an agency within that court's jurisdiction absent modification or reversal of that decision).

10. While the Fifth Amendment does not explicitly guarantee equal protection, courts have recognized that the Amendment includes an equal protection component prohibiting discrimination that is "so unjustifiable as to be violative of due process." *Schneider v. Rusk*, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964) (quoting *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954)).

by the Board or a court. Second, Frock and Stribling argue that the statute violates equal protection by perpetuating the differential proof of dependency requirement declared unconstitutional in *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977).

1

█ The petitioners claim that resting eligibility for benefits upon the time when a person's entitlement to those benefits has been determined by a court or the Board violates due process. This is impermissible, say the petitioners, because it conditions their right to benefits upon when the Board or a court acts affirmatively upon their request for benefits, rather than upon when they became eligible for benefits.

To condition dual benefits upon when entitlement is determined does not seem to us to be so unreasonable as to constitute a denial of due process.[11] "Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program . . ., we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Califano v. Goldfarb*, 430 U.S. 199, 210, 97 S.Ct. 1021, 1028, 51 L.Ed.2d 270 (1977) (quoting *Flemming v. Nestor*, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)).[12] Here, Congress, faced with a system in severe financial distress, sought to put a final end to dual benefits. *See* H.R.REP.No.97–208, 97th Cong., 1st Sess. 863, *reprinted in* [1981] U.S. CODE CONG. & AD.NEWS 1010, 1224. Faced

with our *Gebbie* decision, which threatened to impose significant financial burdens upon the railroad retirement system, Congress declared that any employees, male or female, whose entitlement to dual benefits had not been decided by the enactment date would not receive them. The decision not to revoke the benefits of those who had been determined to be eligible for them was a rational means of recognizing expectations created by court decisions and Board actions. Consideration of such expectations is a legitimate concern of Congress. *See United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 178, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).

The petitioners cite no support for the proposition that hinging the right to dual benefits upon a determination of entitlement violates due process. *Logan v. Zimmerman Brush Co.*, —— U.S. ——, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), is inapposite. There, the Court held that where a state official failed to conduct a statutorily mandated procedure, due process was violated. Here, however, there is no procedure which the petitioners claim was denied them. Rather, the petitioners object that a procedure was required before benefits would vest.[13] We therefore find no violation of due process in Congress' decision to condition the receipt of dual benefits upon whether or not the petitioners' entitlement to benefits had been determined as of the date that section 3(h)(6) was enacted.

2

█ Frock's and Stribling's equal protection claims rest upon their characterization

11. Because *Gebbie* did not decide the entitlement of non-parties to that case, we reject the petitioners' characterization of the Board's refusal to apply *Gebbie* to their cases as "illegal action."

12. "[R]ailroad benefits, like social security benefits, are not contractual and may be altered or even eliminated at any time." *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980). *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 575, 99 S.Ct. 802, 805, 59 L.Ed.2d 1 (1979).

13. The petitioners suggest that the Board took an excessive amount of time in processing their applications. We note, however, that the peti-

tioners do not claim that the Board deliberately delayed action on their applications in anticipation of the passage of section 3(h)(6). Nor is there any evidence in the record to support this conclusion. Unfortunately, the Board has apparently had considerable difficulty in processing claims on a timely basis, so that the two-year period between the filing of Stribling's application and its final denial does not seem unusual. *See, e.g., Kelly v. Railroad Retirement Board*, 625 F.2d 486 (3d Cir. 1980) (more than three years to process disability claim); *Parker v. Railroad Retirement Board*, 441 F.2d 460 (7th Cir. 1971) (dependents' disability application pending for over six years).

of section 3(h)(6) as an attempt to "grandfather in" an interpretation of 45 U.S.C. §§ 231b(h)(3) and (4) which was violative of the Equal Protection Clause. Section 3(h)(6) precludes dual benefits for anyone whose eligibility had not been determined by August 13, 1981. Thus, those entitled to dual benefits under the statute are persons who were eligible for dual benefits under the Board's interpretation of 45 U.S.C. §§ 231b(h)(3) and (4), and those who successfully litigated their entitlement in court. The Board's interpretation was that pre-*Goldfarb* standards were to be applied to establish eligibility. As we noted above, the *Gebbie* court never decided the constitutionality of this application of §§ 231b(h)(3) and (4), but the court suggested that this application was contrary to *Goldfarb*. Frock and Stribling argue that because section 3(h)(6) permits this application to stand, it violates equal protection by discriminating on the basis of gender.[14] Such a result, however, is not supported by equal protection analysis.

Numerous cases enunciate the strict standard to be applied to statutes which are explicitly gender-based. *See, e.g., Kirchberg v. Feenstra*, 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981); *Califano v. Webster*, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). These cases, however, fail to provide guidance for our analysis here. Section 3(h)(6) is, on its face, gender-neutral. It simply states that if an individual has not been determined to be eligible for dual benefits by the date of the section's enactment, then that person cannot receive a windfall benefit. Thus, we must determine whether section 3(h)(6) operates in practice to violate equal protection.

The Supreme Court explained the proper method of analyzing a facially neutral statute for equal protection violations in *Per-*

sonnel *Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). There, the Court upheld a statute which, though neutral on its face, operated "overwhelmingly" in favor of males by providing employment benefits to veterans who had at least one day of "wartime service." *Id.* at 269, 99 S.Ct. at 2291. The Court enunciated "a twofold inquiry:"

> The first question is whether the statutory classification is indeed neutral in the sense that it is not gender based. If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination . . . . In this second inquiry, impact provides an "important starting point," . . . but purposeful discrimination is "the condition that offends the Constitution."

*Id.* at 274, 99 S.Ct. at 2293 (citations omitted) (quoting *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971)). In determining whether a law is covertly gender-based the Court suggested looking to the purposes of the statute. However, "[i]f the impact of this statute could not be plausibly explained on a neutral ground, impact itself would signal that the real classification made by the law was in fact not neutral." *Id.* at 275, 99 S.Ct. at 2294. In *Feeney* the Court found that the purpose was the neutral one of rewarding veterans for service to their country. Thus, the Court ruled, "this is not a law that can plausibly be explained only as a gender-based classification. Indeed, it is not a law that can rationally be explained on that ground." *Id.* The Court noted that, while the beneficiaries of the statute were overwhelmingly male, many women were covered, and many men were not covered.

Similarly, the statute here is clearly explainable in terms of a non-discriminatory purpose. By enacting section 3(h)(6) Con-

---

14. The Supreme Court has noted that a social insurance system under which women receive more in spousal benefits than men acts to discriminate against *women. Califano v. Goldfarb*, 430 U.S. 199, 208, 97 S.Ct. 1021, 1027, 51 L.Ed.2d 270 (1977). This result stems from the fact that systems such as social security base benefits paid upon the contribution of the wage-earner. Thus, when women receive more than men in spousal benefits, it means that the contributions of men have purchased more benefits than the contributions of women. *Id.*

gress sought to eliminate dual benefits while ensuring continued benefits to those who had been receiving such benefits. H.R. REP.No.97–208, 97th Cong., 1st Sess. 863, *reprinted in* [1981] U.S.CODE CONG. & AD. NEWS 1010, 1225.[15] Indeed, section 3(h)(6) cannot rationally be explained as an effort to discriminate on the basis of gender. The class of persons excluded from dual benefits under this section will be composed of men and women. Similarly, the class of persons who will receive benefits will be composed of men and women.[16]

Having determined that section 3(h)(6) is indeed gender-neutral, we must look to "whether the adverse effect [of the statute] reflects invidious gender-based discrimination." In order to establish invidiousness, petitioners must show "that a gender-based discriminatory purpose has, at least in some measure, shaped the ... legislation." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 276, 99 S.Ct. 2282, 2294, 60 L.Ed.2d 870 (1979). In proving discriminatory purpose, the petitioners must establish "more than intent as volition or intent as awareness of consequences." *Id.* at 279, 99 S.Ct. at 2296. Rather, they must establish "that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* Here, however, the legislative history is clear that Congress passed section 3(h)(6) not in an attempt to discriminate against anyone on the basis of sex, but rather in an attempt to forestall bankruptcy of the railroad retirement system by eliminating dual benefits for both men and women. *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 169 n.2, 101 S.Ct. 453, 456 n.2, 66 L.Ed.2d 368 (1980). The petitioners, therefore, have

failed to establish that Congress passed section 3(h)(6) with an "invidious gender-based discriminatory purpose." Thus, because section 3(h)(6) passes the two-tier analysis enunciated in *Feeney* we find no violation of the Fifth Amendment's guarantee of equal protection.

### IV

We find, therefore, that section 3(h)(6) was properly applied to deny dual benefits to the petitioners in this case, and that the section does not violate the Fifth Amendment. Accordingly, the decisions of the Railroad Retirement Board denying dual benefits to Frock and Stribling are AFFIRMED.

---

**15.** This attempt to continue dual benefits to those already receiving them is consistent with long-stated policy under the RRA. "[C]utting off the benefits of those already receiving or legally entitled to them would clearly be inequitable. These individuals have a right to receive those benefits the law has led them to rely upon or expect." S.REP.No.93–1163, 93d Cong., 2d Sess. 4, *reprinted in* [1974] U.S.CODE CONG. & AD.NEWS 5702, 5705.

**16.** Benefits will be provided to men and women who met the eligibility requirements as interpreted by the Board—married or widowed men who were able to prove dependency upon their spouses and all married or widowed women, and men who successfully challenged the Board's interpretation in court.