Janet K. STEIGER, on behalf of herself and all others similarly situated, Petitioner,

v.

UNITED STATES RAILROAD RETIREMENT BOARD, Respondent.

No. 84–7165.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1985.

Decided May 29, 1985.

Ronald Sievers, Sievers, Haigh & Minsky, Long Beach, Cal., for petitioner.

Thomas Sadler, Chicago, Ill., for respondent.

Before GOODWIN, SNEED, and SKOPIL, Circuit Judges.

SNEED, Circuit Judge:

Janet Steiger petitions for review of the Railroad Retirement Board's (the Board) computation of her railroad spousal annuity.[1] Because of the enactment of section 1119(d)(2) of the Omnibus Budget Reconciliation Act of 1981 (Omnibus Act), Pub.L. No. 97–35, 1981 U.S.Code Cong. & Ad. News (95 Stat.) 633 (codified at 45 U.S.C. § 231c(e)(5) (1982)), during the pendency of her application for benefits, the Board reduced Steiger's annuity by the amount of her social security benefits. In the absence of this enactment, the Board would have awarded dual benefits under 45 U.S.C. § 231c(e)(1) (1982). Steiger contends that section 231c(e)(5) contravenes the equal protection component of the Due Process Clause of the Fifth Amendment.

I.

STATUTORY BACKGROUND

Three groups of individuals are affected by the statutes at issue in this case. The first group comprises railroad employees who have also worked in nonrailroad jobs and thus are entitled to both railroad retirement benefits and social security benefits. Most, but not all, of these individuals are men. In the second group are those railroad employees whose entitlement to social security benefits stems from their spouses' work in nonrailroad jobs. Males dominate this group as well. Finally, the third group comprises spouses of railroad employees who are also eligible for social security benefits. Females constitute the vast majority of this group.

Before 1974, persons who qualified for railroad retirement benefits and social security benefits received benefits under both systems. Congress determined that these dual payments threatened the solvency of the Railroad Retirement System. *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 168–69 & n. 2, 101 S.Ct. 453, 456 & n. 2, 66 L.Ed.2d 368 (1980).[2]

Congress, in response to the problem, passed the Railroad Retirement Act of 1974, Pub.L. No. 93–445, 88 Stat. 1305 (1974) (codified as amended at 45 U.S.C. §§ 231–231t), *reprinted in* 1974 U.S.Code Cong. & Ad.News 1488. The 1974 Act was designed, in part, to phase out gradually the payment of dual benefits. It reduced

---

1. The Board's authority to award Steiger's annuity stems from 45 U.S.C. § 231f(b)(3). This court has jurisdiction under 45 U.S.C. § 231g, which incorporates 45 U.S.C. § 355(f). Steiger's petition is timely.

2. The problem stemmed from the way benefits under the two systems were calculated. Under the formulas employed, people who split their employment between railroad and nonrailroad employers received dual benefits that exceeded the amount they would have received had they not split their employment. Workers who split jobs thus received a windfall. *See Fritz,* 449 U.S. at 168 n. 1, 101 S.Ct. at 456 n. 1.

all railroad annuities by the amount of benefits payable under the provisions of the Social Security Act. *See* 45 U.S.C. § 231b(m) (1982) (railroad employees' annuities); *id.* § 231c(i)(1) (1982) (railroad spouses' annuities).

The Act then proceeded to restore the amounts offset to all three groups of annuitants, but it limited eligibility to individuals who would have been entitled to dual benefits under the Social Security Act as in effect on December 31, 1974. Section 231b(h)(1)–(2) restored dual benefits to railroad employees whose eligibility for social security rested on their own work records. Section 231b(h)(3)–(4) similarly restored benefits to those workers whose eligibility rested on their spouses' work records. Finally, section 231c(e)(1)–(2) restored dual benefits to spouses of railroad employees who satisfied the vesting and work-related requirements.

All went smoothly until 1977. In that year, the Supreme Court decided *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). *Goldfarb* invalidated social security provisions requiring men, but not women, to show dependency as a condition for receiving spousal benefits. As a consequence, nondependent men began to receive spousal payments.

The Board responded by providing all railroad employees, male and female, with spousal social security benefits. For most men, however, this had no effect on their benefit packages, because the Board reduced their railroad pensions by the amount of spousal benefits received, as required by 45 U.S.C. § 231b(m). The Board refused to restore dual spousal benefits to male railroaders (the males of the second affected group mentioned above) who met the vesting and work-related conditions but who could not establish dependency on their spouses. The Board reasoned that these men were not entitled to dual benefits "under the provisions of the Social Security Act *as in effect on Decem-*

ber *31, 1974*," as required by sections 231b(h)(3) & (4) (emphasis added). The Board interpreted "as in effect on December 31, 1974," to rest eligibility for dual benefits on social security eligibility standards in effect *before* the Supreme Court's 1977 decision in *Goldfarb*.

The Seventh Circuit invalidated this interpretation in *Gebbie v. United States Railroad Retirement Board*, 631 F.2d 512 (7th Cir.1980). The court required the Board to pay dual spousal benefits to these second group male railroaders without regard to the dependency provisions that existed prior to *Goldfarb*. Although the *Gebbie* court declined to apply its holding on a class-wide basis, *see id.* at 516 n. 9, the unanticipated fiscal impact of paying dual benefits to all these male railroad employees on the basis of their wives' work records without regard to dependency prompted Congress to restrict dual benefits further.

Part of the Omnibus Act addressed the problem. A new provision, 45 U.S.C. § 231b(h)(6) (1982), cut off the entitlements to dual spousal benefits of *all* railroad employees who otherwise satisfied the requirements of section 231b(h)(3)–(4) except those whose eligibility for dual benefits "had been determined prior to August 13, 1981." Railroad employees who were eligible for dual benefits based on their own work records (the first group mentioned above) and who otherwise satisfied the conditions of the 1974 Act retained their dual benefits. A parallel provision, 45 U.S.C. § 231c(e)(5) (1982), negated the eligibility of spouses of railroad employees (the third group mentioned above) for dual benefits under section 231c(e)(1)–(2) "unless the entitlement of such person[s] had been determined prior to August 13, 1981." [3] The upshot of these statutory changes is that only the first group of affected individuals retained an unqualified right to dual benefits.

---

**3.** The Omnibus Act also negated the dual benefit eligibility of widows and widowers. *See* 45 U.S.C. § 231c(h)(2). Since Steiger is a spouse and not a widow, her challenge is limited to § 231c(e)(5).

## II.

### FACTS

Steiger is the spouse of an eligible railroad employee and is entitled to a spousal annuity under the Railroad Retirement Act. She is thus a member of the third group of affected individuals. Her entitlement dates from June 1, 1981. Steiger applied for her annuity on June 5, 1981, but due to delays in gathering necessary information from the Social Security Administration, the Board did not award Steiger's annuity until February 8, 1982.

It is not disputed that, as the law stood prior to the enactment of the Omnibus Act, Steiger was entitled to dual benefits under 45 U.S.C. § 231c(e)(1). Because Steiger's eligibility was not determined until February 8, 1982—well after August 13, 1981—the Board applied section 231c(e)(5) to the calculation of her annuity. Accordingly, the Board did not employ section 231c(e)(1) to restore Steiger's dual benefits. Steiger appealed the Board's initial determination to an appeals referee and then to the Board itself. At each stage, the Board reaffirmed its decision to apply section 231c(e)(5) to Steiger's annuity. Steiger now petitions this court, challenging the constitutionality of that section.

## III.

### DISCUSSION

#### A. *Gender Discrimination*

■ A party seeking to sustain a provision that classifies individuals according to their gender must show an "exceedingly persuasive justification" for the classification. *Heckler v. Mathews,* — U.S. —, 104 S.Ct. 1387, 1397, 79 L.Ed.2d 646 (1984) (quoting *Mississippi University for Women v. Hogan,* 458 U.S. 718, 724–25, 102 S.Ct. 3331, 3336–37, 73 L.Ed.2d 1090 (1982)). To meet this burden, the party must show "at least that the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.; see*

*Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976). Steiger maintains that the Board cannot establish a satisfactory justification for eliminating future dual benefits for railroad spouses (the third group) while allowing railroad employees to retain their eligibility for dual benefits based on their own work records (the first group). And even if such a justification exists, Steiger maintains that the Board cannot show the requisite "direct, substantial relationship between objective and means...." *Mississippi University for Women v. Hogan,* 458 U.S. 718, 725, 102 S.Ct. 3331, 3337, 73 L.Ed.2d 1090 (1982).

■ On its face, however, section 231c(e)(5) is gender neutral. It denies dual spousal benefits to all "person[s] whose entitlement to such benefits was not determined by August 13, 1981." By its terms, this category comprises both men and women.

The Supreme Court formulated a two-part test to assess the validity of gender-neutral statutes that have a disparate impact on women in *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). The first question is whether the classification "is indeed neutral in the sense that it is not gender based." *Id.* at 274, 99 S.Ct. at 2293; *accord Martin v. International Olympic Committee,* 740 F.2d 670, 678 (9th Cir.1984). "If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination." *Feeney,* 442 U.S. at 274, 99 S.Ct. at 2293; *accord Martin,* 740 F.2d at 678.

Determining whether the classification is neutral entails an examination of the legislative purpose. If the statute's impact cannot be explained on a neutral ground, though, "impact itself would signal that the real classification made by the law was in fact not neutral." *Feeney,* 442 U.S. at 275, 99 S.Ct. at 2294. In the present case, a neutral purpose exists.

Steiger maintains that Congress's treatment of railroaders' spouses reflects overt sex discrimination against women. In enacting the pertinent provisions of the Omnibus Act, Congress intended to redress the unanticipated fiscal impact threatened by class-wide application of the holding in *Gebbie* that the Board must award dual spousal benefits to male railroad employees (group two) regardless of dependency. Accordingly, Congress eliminated future entitlements to such spousal benefits by enacting section 231b(h)(6). Realizing that the class of railroad employees is predominantly male, Steiger continues, Congress eliminated the future entitlements of railroad spouses—a class that is predominantly female—in an effort to forestall charges of unconstitutional gender discrimination. Therefore, Steiger concludes, section 231c(e)(5) is not gender neutral.

Perhaps Steiger is suggesting that eliminating discrimination against males by taking the offending advantage from females is somehow constitutionally improper. If so, she would be wrong. *See Heckler v. Mathews,* — U.S. —, 104 S.Ct. 1387, 1394–95, 79 L.Ed.2d 646 (1984). In any event, she misreads the legislative history.

In enacting the pertinent provisions, Congress explained that "[t]he approach of eliminating new entitlement for windfall payments for male and female employee annuitants who are eligible for auxiliary [i.e., spousal] social security benefits and for all spouses, widows and widowers ... would avoid allegations of unconstitutionality based upon sex discrimination." S.Rep. No. 139, 97th Cong., 1st Sess. 915, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 939. Contrary to Steiger's contentions, Congress recognized that *Goldfarb* and *Gebbie* would create new entitlements, not just for male employees entitled to dual spousal benefits, but also for male spouses and survivors of female railroad employees. *See* H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 863, *reprinted in* 1981

U.S.Code Cong. & Ad.News 1010, 1225 ("*Gebbie,* which involved windfall benefits to employees based upon their spouses' Social Security Act employment, also has relevance to two other categories: Spouse annuity windfalls payable under section 4(e) [45 U.S.C. § 231c(e) ] and survivor annuity windfall benefits payable under section 4(f)(2) [sic] [45 U.S.C. § 231c(f) ].". Faced with the unanticipated expense of paying benefits to males in these categories, Congress reacted by restricting the eligibility of individuals in each category, male and female alike, to future dual benefits. Its approach is gender neutral.

Nonetheless, because most railroad employees are male, and most railroad spouses female, the decision of Congress to cut off spousal benefits under section 231c(e)(5) bears most heavily on women.[4] We therefore must ask whether this adverse effect reflects invidious gender discrimination. *See Feeney,* 442 U.S. at 274, 99 S.Ct. at 2293. "In this second inquiry, impact provides an 'important starting point' ... but purposeful discrimination is 'the condition that offends the Constitution.'" *Id.* (quoting *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) and *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971)) (citations omitted).

"Discriminatory purpose" means more than an awareness of the consequences of adopting a particular course of action. "It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 279, 99 S.Ct. at 2296. With regard to gender-based classifications, the constitutional objection arises when the government bases its decisions on sexist assumptions—on "archaic and overbroad" generalizations about sex roles. *See, e.g., Heckler v. Mathews,* — U.S.

---

**4.** In 1969, 93.5% of all railroad employees were male, a much higher percentage than the proportion of males in the general work force.

H.R.Doc. No. 350, 92d Cong., 2d Sess. 87–88 (1972).

——, 104 S.Ct. 1387, 1398, 79 L.Ed.2d 646 (1984); *Califano v. Goldfarb*, 430 U.S. 199, 211, 217, 97 S.Ct. 1021, 1029, 1032, 51 L.Ed.2d 270 (1977).[5]

Although to date no cases have considered the validity of section 231c(e)(5), two cases have upheld the parallel provision, section 231b(h)(6), against equal protection attacks. *See Givens v. United States Railroad Retirement Board*, 720 F.2d 196 (D.C.Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984); *Frock v. United States Railroad Retirement Board*, 685 F.2d 1041 (7th Cir. 1982), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983). As already discussed, section 231b(h)(6) eliminated the future entitlement of railroad employees (group two)—most of whom are men—to dual spousal benefits. The plaintiffs in both cases raised equal protection challenges, asserting that the statute improperly insulated the dependency provisions found unconstitutional in *Goldfarb*. *Givens*, 720 F.2d at 202; *Frock*, 685 F.2d at 1047–48. Both courts disagreed. After finding that section 231b(h)(6) constituted a gender-neutral measure to limit the application of the *Gebbie* decision, both courts concluded that the statute's adverse effect on men did not reflect invidious discrimination based on gender. Congress passed section 231b(h)(6) not to discriminate on the basis of sex but to preserve the solvency of the railroad retirement system by eliminating dual benefits for both men and women. *See Givens*, 720 F.2d at 202; *Frock*, 685 F.2d at 1048–49.

Similarly, the legislative history to section 231c(e)(5) does not reflect that Congress acted because of that section's adverse effect on women. Congress faced the new eligibility of male spouses of female railroaders for dual spousal benefits. It reacted by eliminating dual benefits for *both* men and women. We do not believe that this approach reflects a discriminatory purpose.

Steiger points out that, unlike male railroad employees who had no expectancy of receiving dual spousal benefits prior to the decisions in *Goldfarb* and *Gebbie*, female spouses of railroaders have reliance interests in receiving full unreduced benefits upon retirement. Like male railroaders whose eligibility for dual benefits rests on their own employment records (group one), these females' eligibility does not stem from the new rules expounded in *Goldfarb*. Their eligibility preexists *Goldfarb*. Congress cannot, Steiger concludes, protect the reliance interests of male railroad employees while curtailing the reliance interests of their spouses.

In making this argument, Steiger relies heavily on the reasoning employed in *Heckler v. Mathews*, —— U.S. ——, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984). That case also involved congressional efforts to ameliorate the fiscal drain expected as a result of the *Goldfarb* decision. There, Congress had eliminated dual spousal benefits payable to recipients of government pensions. It passed a pension offset provision which reduced spousal benefits payable under the social security system by amounts received under certain government pensions. But to protect the reliance interests of individuals whose eligibility, like Steiger's, did not depend on *Goldfarb*—i.e., women and a small number of dependent men—Congress exempted those spouses who were eligible

---

**5.** In *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982), the Court, applying intermediate scrutiny, invalidated a state law excluding males from enrolling in a state-supported nursing school. In formulating the elements of the intermediate standard, the Court made clear its concern with improper gender-based stereotyping. First, the Court observed, the state's objective must be a legitimate one: A "statutory objective ... to exclude or 'protect' members of one gender because they are presumed to suffer from an in-

herent handicap or to be innately inferior ... [is itself] illegitimate." *Id.* at 725, 102 S.Ct. at 3336. And even where the legislative purpose is legitimate, the Court continued, the means chosen must bear a substantial relationship to the ends sought: "The purpose of requiring that close relationship is to assure that the validity of a classification is determined through reasoned analysis rather than through the mechanical application of traditional, often inaccurate, assumptions about the proper roles of men and women." *Id.* at 725–26, 102 S.Ct. at 3337.

to receive pension benefits prior to December 1982 and who would have qualified for dual spousal benefits under the Social Security Act as "in effect and being administered" prior to the *Goldfarb* decision.

Despite the exemption's temporary perpetuation of the dependency requirements struck down in *Goldfarb,* the Supreme Court upheld the measure. It held that protecting those who had relied on prior law presented an "exceedingly persuasive justification" for the classification and that the means adopted—an exception narrowly tailored to protect only those who made retirement plans prior to the subsequent changes in the law—were substantially related to the end sought. 104 S.Ct. at 1397–1401.

At most, *Mathews* merely suggests that Congress *could* have *temporarily* protected the reliance interests of railroad wives by curtailing immediately only the eligibility of railroad husbands for dual spousal benefits. *Mathews* neither holds nor suggests that Congress must do so. Congress, in this case, curtailed the eligibility of men and women of groups two and three alike. Nothing in the Constitution prevents this.

### B. *Rational Basis*

Steiger insists, however, that this is not an adequate answer. She points to the railroaders who fall within group one whose entitlement to dual benefits is perpetuated. She insists that her reliance on dual benefits is no less than theirs and that they are predominantly male and the group of which she is a part is predominantly female. Nor, by implication we deduce, would she acknowledge that their contribution, at least in a general sense, was any greater than hers. She argues that even if Congress's classification does not reflect invidious gender discrimination, this differential treatment lacks a rational foundation and therefore violates due process.

A statute satisfies the dictates of due process so long as the "classificatory scheme chosen by Congress rationally advances a reasonable and identifiable governmental objective...." *Schweiker v.*

*Wilson,* 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981). Here, Congress wished to restrict the outlay of funds into the railroad retirement system. It did so by curtailing the payment of dual spousal and survivors' benefits. Although female spouses of railroad retirees and railroad workers entitled to dual benefits on their own employment records may share a reliance interest in the continued payment of dual benefits, Congress's decision to extend greater benefits to railroad employees than to their spouses is not "patently arbitrary or irrational." *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 177, 101 S.Ct. 453, 460, 66 L.Ed.2d 368 (1980); *Spraic v. United States Railroad Retirement Board,* 735 F.2d 1208, 1212 (9th Cir.1984). We are reluctant to second-guess Congress's judgment respecting public policy. *See Schweiker,* 450 U.S. at 234, 101 S.Ct. at 1082.

AFFIRMED.