**Joe D. ROMERO and Virginia Romero, Plaintiffs-Appellants,**

v.

**Patricia HARRIS, Secretary of Health, Education & Welfare, Defendant-Appellee.**

**No. 79–1737.**

United States Court of Appeals, Tenth Circuit.

March 11, 1982.

Timothy Meehan and Santiago Chavez, of Northern New Mexico Legal Services, Inc., Taos, N. M., for plaintiffs-appellants.

Alice Daniel, Asst. Atty. Gen., Washington, D. C. (R. E. Thompson, U. S. Atty., Albuquerque, N. M., Randolph W. Gaines, Chief of Litigation, Baltimore, Md., Larry K. Banks, Dept. of Health and Human Services, Washington, D. C., were on the brief), for defendant-appellee.

Before SETH, Chief Judge, and HOLLOWAY and SEYMOUR, Circuit Judges.

HOLLOWAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P. 34(a); Tenth Cir. R. 10(e). The cause is therefore ordered submitted without oral argument.

This is an action by plaintiffs Joe D. and Virginia Romero for review of a decision of the Secretary of Health, Education and Welfare, adverse to plaintiffs. The final decision of the Secretary upheld a ruling against plaintiffs that they make repayment of alleged overpayments of supplemental security income (SSI) benefits. After review of the record the district court held that the Secretary's decision was correct, and plaintiffs appeal.

I

Plaintiffs were recipients of SSI benefits before this action was brought under Title 16 of the Social Security Act (42 U.S.C. § 1381 et seq.). During 1976 Mr. Romero served as governor of the Taos Indian Pueblo. He received no wages for this position. However, he did receive a portion of the royalties collected from tourists. These royalties were placed in a savings account which gave the plaintiffs excess resources allowed for a couple under the Social Security Act. The resource limitation for receipt of SSI benefits by an individual who had an eligible spouse, as here, was $2,250 for their nonexcludable resources. See 20 CFR § 416.1205(b).

In January 1978 the Social Security Claims Representative conducted an interview with plaintiffs and discovered that they had a savings account containing excess resources.[1] On further examination it was determined that the plaintiffs were overpaid social security benefits from July 1976 through August 1977, because of the funds held in this account. The amount of the overpayments was determined to be $1,888.50 for each plaintiff.[2]

In October 1978 an administrative hearing was held. Mrs. Concho, plaintiffs' daughter, interpreted for Mr. Romero who does not speak English. At the time of the hearing Mr. Romero was 81 and Mrs. Romero was 77. Mr. Romero testified that he and his wife had a savings account at the time of one of the interviews which was conducted in October 1977. He testified that the balance in the account at this time was approximately $2,000. We note this was below the resource limitation, mentioned earlier. He further indicated that at this interview he was not asked whether or not he had a savings account, nor did he disclose such information. However, he did state that he would have disclosed the existence of the savings account had he been

---

1. The record shows that there were balances as follows in the plaintiffs' saving account at the First State Bank of Taos (II R. 127, 128):

| | |
|---|---|
| 7–1–76 | $ 1,935.42 |
| 7–27–76 | 3,536.42 |
| 8–12–76 | 4,652.07 |
| 10–29–76 | 4,705.64 |
| 11–29–76 | 3,405.64 |
| 12–31–76 | 3,434.02 |
| 01–03–77 | 4,434.02 |
| 03–07–77 | $ 3,434.02 |
| 03–31–77 | 3,476.95 |
| 06–30–77 | 3,620.40 |
| 07–01–77 | 3,520.40 |
| 08–22–77 | 3,020.40 |
| 09–13–77 | 2,820.40 |
| 09–22–77 | 2,000.00 |

2. From April 1978 until August 1978 plaintiffs' entire benefits were withheld so that at the

asked. Mr. Romero testified that between January 1976 and October 1977 he was not made aware by anyone from the social security administration that he had a duty to report the savings account. Mrs. Romero testified to the same effect on these facts.

The Administrative Law Judge (ALJ) made the following findings of fact: (1) the two claimants were overpaid benefits in the sum of $1,888.50 each in supplemental security income from July 1, 1976 to September 1977; (2) the claimants were at fault in causing the overpayments; (3) a refund of the overpayments would not be against equity and good conscience; (4) a refund of the overpayments would not defeat the purpose of Title XVI of the Social Security Act; (5) recovery has been made of a portion of the overpayments, and (6) total recovery of the overpayments should not be waived. The ALJ held as a matter of law that refund of the overpayments should not be waived pursuant to 42 U.S.C.A. § 404(b).

The plaintiffs appealed the ALJ's decision to the Appeals Council which concluded that there was no basis for granting the plaintiffs' request for review. In reaching this conclusion the Council discussed only on the fault issue. Specifically, it cited Exhibit 2, plaintiffs' statement for determining continuing eligibility for SSI payments dated October 7, 1977, as indicating that plaintiffs reported no savings when they actually had $2,000. The Council's decision also stated that it was known that plaintiffs answered questions about their income and resources "on November 9, 1976, and apparently failed to report savings of $4,705.64." The Council said that this supported a finding that plaintiffs "were not without fault in causing the overpayment and therefore recovery may not be waived even if it was found that it would defeat the purpose of title XVI of the Social Security Act." (II R. 3). This became the final decision of the Secretary.

Plaintiffs then brought this review action in the District Court for the District of New Mexico. The district judge's opinion stated that the ALJ had not made any specific

findings as to why he thought the plaintiffs were at fault; that however the Council's letter notifying them of its decision "states that the plaintiffs reported no savings when they actually had some and they did not report savings at another time." The court stated that while Mr. Romero does not understand English, his wife does, that both knew about the savings account and used the money as their own, and that they should at least have reported the savings on their statement for continuing eligibility in October 1977. The court concluded that there is substantial evidence from which the Secretary could conclude that plaintiffs were at fault in causing the overpayments. (I R. 26–27).

On appeal, plaintiffs make three general arguments for reversal. They claim that the Secretary's decision is in error in that (1) the finding of a knowing failure in November 1976 to disclose material information concerning plaintiffs' SSI benefits is not supported by substantial evidence or any record evidence; (2) the finding of a knowing failure in October 1977 to disclose information was in error because it was immaterial to the creation of the alleged overpayments, being after the period of the overpayments; (3) the findings that recovery of the overpayments would not defeat the purpose of Title XVI and would not be against equity or good conscience are not supported by substantial evidence and are in error.

II

Section 1631(b) of the Social Security Act as amended, 42 U.S.C.A. § 1383(b), provides that whenever the Secretary finds that an incorrect amount of benefits has been paid with respect to an individual, proper adjustment or recovery shall be made by appropriate adjustments in future payments, or by recovery from or payment to such individual or his eligible spouse. However, 42 U.S.C.A. § 404(b) provides that

In any case in which more than the correct amount of payment has been

time of the administrative hearing the amount

of the overpayment was $1,204.35 each.

made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

The regulations follow the statutory pattern. 20 CFR § 416.550 (1976) provides for waiver of adjustment or recovery of an overpayment of supplemental security income benefits when:

(a) [t]he overpaid individual was without fault in connection with an overpayment, and

(b) [a]djustment or recovery of such overpayment would either:

(1) [d]efeat the purpose of title XVI, or

(2) [b]e against equity or good conscience, or

(3) [i]mpede efficient or effective administration of title XVI due to the small amount involved.

█ In order to come within these provisions for waiver of adjustment or recovery to recoup overpayments a recipient must make the showing that he comes within such waiver provisions. *Morgan v. Finch*, 423 F.2d 551, 553 (6th Cir.).

20 CFR § 416.552 (1976) provides that in determining whether an SSI recipient is "without fault," it is necessary to consider all the pertinent circumstances surrounding the overpayment in the particular case. The Social Security Administration considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (*e.g.*, age, comprehension, memory, physical and mental condition). Although the finding depends on all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from one of the following:

(a) [f]ailure to furnish information which the individual knew or should have known was material;

(b) [a]n incorrect statement made by the individual which he knew or should have known was incorrect . . ., or

(c) [t]he individual did not return a payment which he knew or could have been expected to know was incorrect.

The plaintiffs' challenges to the findings made against them must now be considered.

### III

Plaintiffs argue that the district court erred in holding that the Secretary's decision was supported by substantial evidence in finding that the plaintiffs were not without fault in creating the overpayments. Plaintiffs vigorously challenge the two portions of the evidence relied on by the Appeals Council and the district judge as supporting the general finding against them on this issue of fault.

First, the Appeals Council's decision and the findings of the ALJ, (II R. 3, 15), cite Exhibit 2 and the Appeals Council's decision states that the exhibit was dated October 7, 1977, and shows that the plaintiffs "reported no savings when [they] actually had $2,000." (II R. 3). The ALJ cited Exhibit 1 dated June 1978 and Exhibits 2, 3 and 4 dated respectively October 1977, February 1978, and May 1978, (II R. 15), as support for the finding against plaintiffs on the fault issue. The plaintiffs point out, however, that such evidence is immaterial because it all relates to statements *after* the period in question. The ALJ found that the overpayments were between July 1, 1976, and September 1977 and the Appeals Council accepted the ALJ's decision without modification on that finding, or otherwise.

We must agree that no representations by plaintiffs within these exhibits occurred at a time when they could have caused any of the overpayments in question to occur. Indeed the Secretary's regulations quoted

earlier specifically provide that an individual "will be found to have been at fault in connection with an overpayment *where an incorrect payment resulted from*" failure to furnish information or an incorrect statement, *inter alia.* 20 CFR § 416.552 (1976). (Emphasis added). In addition, there was testimony by Mr. and Mrs. Romero that they had no communication with the Social Security offices about the savings account prior to October 1977 and had no idea that disclosure was required. (II R. 32–35, 40). There was no testimony by Government witnesses showing any statements by plaintiffs before October 1977 from which the overpayments could have resulted. We must agree that these exhibits as cited and the record testimony cannot serve as substantial evidence supporting the finding that plaintiffs were at fault in causing the overpayments.

Further, the plaintiffs challenge the statement in the decision of the Appeals Council that it was "further known that plaintiffs answered questions about [their] income and resources on November 9, 1976, and apparently failed to report savings of $4,705.64." (II R. 3). This statement is not supported by any citation to record evidence, and no finding to this effect concerning any November 1976 events was made by the ALJ. No evidence cited by the ALJ supports this statement of the Appeals Council. We find no support in the record for the statement and there was the direct testimony of Mr. and Mrs. Romero, cited earlier, that they had no communication with the Social Security offices before October 1977 about the savings account. Despite the plaintiffs' direct challenge on the issue (Brief of Appellants at 13–14), there is no evidence cited by the Government in its responsive brief to defend the Council's statement about the alleged November 9, 1976, failure to report the savings account.

▆ On this state of the record, and in view of the requirement of the regulations

that a finding of fault is made when overpayment "resulted from" a failure to furnish information or an incorrect statement, we must hold that there is not substantial evidence on the record as a whole to support the findings of the Secretary on this issue. *Hedge v. Richardson*, 458 F.2d 1065, 1067 (10th Cir.). Thus the finding on this issue must be reversed and we hold that on the record the first condition for waiver of recovery of the overpayment is satisfied, namely that plaintiffs were not at fault in causing the overpayments.

### IV

This brings us to the remaining part of the showing required of plaintiffs, namely that recovery of the overpayments would defeat the purpose of Title XVI, or that recovery would be against equity or good conscience, or that it would impede the efficient or effective administration of Title XVI due to the small amount involved. 20 CFR § 416.550 (1976).

Plaintiffs argue that they have satisfied this second part of their burden, namely that they had shown that recovery would defeat the purpose of Title XVI under the standards of the regulations and that recovery would be against equity and good conscience. First they say that the record establishes that their only source of income was SSI payments and that withholding of benefits to recoup the overpayments forced them below the minimum levels of income permissible under the regulations for necessary living expenses. (Appellants' Reply Brief at 11–12). Thus they contend that the summary finding of the ALJ that refund would not defeat the purpose of Title XVI is not supported by the record and is in error.

The controlling regulation for waiver on the ground that recovery of overpayments would defeat the purpose of Title XVI is 20 CFR § 416.553, reproduced in the margin.[3]

---

**3.** 20 CFR § 416.553 provides that:

Waiver of adjustment or recovery is proper when the person on whose behalf waiver is being considered is without fault, as defined

in § 416.552, and adjustment or recovery would defeat the purpose of title XVI. For purposes of this subpart, adjustment or re-

The 1978 version of this regulation is the relevant one on this issue because the ALJ's finding that recovery would not defeat the purpose of Title XVI was made in October 1978. (II R. 16). Moreover it was in September 1978 when the Social Security Administration informed the plaintiffs of the amount of their reduction in benefits as a result of the overpayment. The Administration stated that $35.51 would be withheld from each of the monthly SSI benefit checks sent to each recipient, beginning in October 1978. It also stated that beginning in October 1978, each plaintiff was entitled to $121.05 on a continuing monthly basis. (II R. 138–39).

Plaintiffs contend that the ALJ's finding of October 27, 1978, that refund would not defeat the purpose of Title XVI, (II R. 16), is not supported by substantial evidence; that the record facts clearly establish that recovery would defeat the purpose of Title XVI, under either of the standards set out in 20 CFR § 416.553 (1978). It is only necessary for the claimant to make a showing under subsection (a) or (b) in the alternative, and here the pertinent one is subsection (a) of § 416.553.

> covery of an overpayment will be considered to defeat the purpose of title XVI:
> (a) If such person's current total monthly income does not exceed:
> (1) The applicable Federal monthly standard payment rate (see Subpart D of this part), plus
> (2) One-third of the quarterly amount of earned or unearned income excludable pursuant to § 416.1165 (*i.e.* $20), plus
> (3) One third of the quarterly amount of earned income excludable pursuant to § 416.1167 but no more than $65, plus
> (4) The applicable State supplementary payment, if any (see Subpart T of this part); or
> (b) If recovery or adjustment would deprive such person of income or financial resources needed for ordinary and necessary living expenses under the criteria in § 404.-508(a) of this chapter. [40 FR 47764, Oct. 10, 1975]

4. Cost of living adjustments are made from time to time, but for our purposes it is unnecessary to trace further increases after this $236.60 figure.

5. The appellate briefs of the parties are in agreement that the Romeros' sources of funds

Plaintiffs made the requisite showing under section (a) that their total monthly income would not exceed the applicable federal monthly standard payment rates, plus one third of the quarterly amount of excludable earned and unearned income plus any state supplementary payments. The federal monthly standard payment rate in effect for the remainder of 1975 and any calendar year thereafter is $236.60. 20 CFR § 416.412 (1978).[4] Within the meaning of § 416.553, see note 4, *supra*, plaintiffs have no excludable earned and unearned income, nor do they receive any state supplementary payments, (II R. 85, 94, 98), and these facts are not in controversy. Thus, the $236.60 amount is the one to be compared with the plaintiffs' current total monthly income since plaintiffs have no other monthly income than the SSI payments.[5] Considering this single source of income, it is clear that the plaintiffs' combined total monthly benefits of $171.08 (total benefit after monthly withholding to recover overpayment) are *less* than $236.60, the "Federal Monthly standard payment" under § 416.553, with required additions.[6]

consisted solely of SSI and food stamps. (Appellants Reply Brief at 11–12; Brief for Appellee at 8). Mr. Romero's term as Governor of the Pueblo, during which he had received tourists' royalties, ceased in December 1976. (II R. 31-32). There was a dispute as to whether the value of food stamps coupons are includible as income, but the regulations of the Secretary clearly stipulate that they are not includible. 20 CFR § 416.1146(d) (1978).

6. The Secretary's brief of May 1980 states that "plaintiffs, even with the $71.00 recoupment adjustment, received $373.00 monthly in SSI and food stamp benefits." (Brief for Appellee at 8). For purposes of § 416.553, the $100 food stamp benefits to the couple are not considered. See note 6, *supra*. The remaining $273 figure as a monthly SSI payment to plaintiffs as a couple is not shown in our record. However, if payments have risen to $273 monthly, then after the $71.02 recoupment withholding they still would be below the $236.60, which was the minimum amount of income for an eligible couple under § 416.553. And, as stated earlier, just before the critical time of the October 1978 hearing, the Social Security Administration wrote both plaintiffs and said their monthly payments would be

■ In sum, the record is not in dispute on these controlling facts. The effect of the adjustments reducing plaintiffs' SSI payments in 1978 brought their net benefits below levels specified by § 416.553(a) (1978), thus defeating the remedial purpose of Title XVI. *Woods v. Gardner*, 286 F.Supp. 648, 651 (W.D.Pa.). The finding that recovery by withholding from plaintiffs' SSI benefits would not defeat the purpose of Title XVI is clearly not supported by substantial evidence and must be reversed.[7]

Accordingly the judgment upholding the Secretary's decision and dismissing the complaint is reversed and the case is remanded for further proceedings in accord with this opinion.

$121.05 each "before we begin to recover your overpayment," (II R. 138, 139), by withholding $35.51 from the check to each plaintiff. As reduced by the withholding, the 1978 net payments of $171.08 to the couple were well below the $236.60 minimum so as to defeat the purpose of the Title under § 416.553.

7. In view of our disposition on this proposition that recovery would defeat the purpose of Title XVI it is unnecessary to address the alternative question whether recovery would be against equity and good conscience, although a substantial question is also raised as to the ALJ's finding on that issue.