James P. KIERNAN, Petitioner,

v.

UNITED STATES RAILROAD RETIRE-
MENT BOARD, Respondent.

No. 79–2319.

United States Court of Appeals,
Tenth Circuit.

Jan. 3, 1983.

David S. Knudson of King, Stokes, Knudson & Nitz, Salina, Kan., for petitioner.

Stanley Jay Shuman, Gen. Atty., Railroad Retirement Bd., Chicago, Ill. (Dale G.G. Zimmerman, Gen. Counsel, and Edward S. Hintzke, Asst. Gen. Counsel, Railroad Retirement Bd., Chicago, Ill., were also on brief), for respondent.

Before HOLLOWAY, LOGAN and SEYMOUR, Circuit Judges.

HOLLOWAY, Circuit Judge.

Pursuant to the review provisions of the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 355(f), James P. Kiernan timely petitions for review of a final decision of the Railroad Retirement Board (Board) which found that he could not split his military service time from 1951 to 1970 in order to qualify for benefits under both the Railroad Retirement Act (the Act) and the Social Security Act. The Board reported to the Social Security Administration that all of petitioner Kiernan's military service time was "creditable" under the Railroad Retirement Act. (R. 117).

I

The facts are not in dispute. Kiernan was an employee of the Penn Central Company from prior to World War II until he entered the United States Army in October 1944. He served in the Army until November 1946 when he returned to the railroad. Kiernan's employment with the railroad continued until he reenlisted in May 1951 during the Korean War. He remained continuously in that army service until he retired with physical disability in September 1970. (R. 22, 129).

In April 1970 Kiernan wrote to the Board inquiring as to what military service time would be creditable toward railroad disabili-

ty benefits. The Board allowed him credit for military service through June 1954, a total of sixty-two months which, when added to his seventy-eight months of actual railroad service, qualified him for a railroad disability annuity. (R. 132–33).[1]

In September 1970 Kiernan applied to the Social Security Administration for disability benefits based on the Social Security taxes paid from his military wages since January 1, 1957. Subsequently in March 1971 Kiernan applied for disability benefits under the Railroad Retirement Act (R. 131), and in August 1971 he received a certificate of annuity from the Board for a period including military service through October 1952. In the application Kiernan claimed military service from October 1944 through September 1946 and May 1951 through October 1952, a total of forty-two months, which, when added to his seventy-eight months of actual railroad employment, amounted to the 120 months required by the Act. (R. 128).[2]

By a letter dated July 26, 1972, the Board notified Kiernan that military service could not be split and applied partially for railroad retirement benefits and partially for Social Security benefits and gave him the option of filing a supplemental application claiming all of his military service, thereby entitling him to railroad retirement benefits. (R. 124). The letter also stated that the military service he had claimed was insufficient to qualify for railroad retirement benefits. Two weeks later the Board informed Kiernan that his failure to claim all of his military service would mean the benefits already awarded amounted to a complete overpayment and that the annuity would be suspended effective September 1, 1972. (R. 123).

---

1. The precise breakdown of military service allowed to be credited toward railroad retirement benefits was set forth by the Board as follows, (R. 132):

 Oct. – Dec., 1944 – 3 months
 Jan. – Dec., 1945 – 12 months
 Jan. – Dec., 1946 – 9 months
 May – Dec., 1951 – 8 months
 Jan. – Dec., 1952 – 12 months
 Jan. – Dec., 1953 – 12 months
 Jan. – June, 1954 – 6 months

2. In order to establish insured status under the Railroad Retirement Act, the employee must have completed at least 120 months of railroad service. 45 U.S.C.A. § 228b(a)(1).

Kiernan filed the supplemental application leaving blank the line on which the dates of military service were to be filled in. (R. 120). Subsequently, however, by a letter dated August 11, 1972, Kiernan informed the Director of Retirement Claims that he had "claimed all military service with the Railroad Retirement Board . . . ." (R. 118; *see also* 116; *but see* 22, 19). On September 6, 1972, the Board sent to the Social Security Administration a "Notice of Military Service Creditable under RRA" which indicated that all of Kiernan's military service was creditable under the Act. (R. 117). In all correspondence from Kiernan subsequent to his August 11, 1972, letter he maintained that military service time may be split in order to qualify for benefits under both Acts. (*See e.g.,* R. 107–08, 85–86, 80–82, 69, and 67–68). Also in a May 14, 1973, letter to Senator Robert Dole, Kiernan claimed entitlement to benefits under both Acts and stated that he "did not submit an application for the purpose of waiving one program over the other." (R. 107).

By a letter dated November 5, 1973, the Board again notified the Social Security Administration that all of Kiernan's military service was creditable under the Railroad Retirement Act and went on to state that without all of the service time, he lacked sufficient railroad service for railroad benefits and that the Board had a policy against splitting military service in the manner which Kiernan had attempted. (R. 90–91). In February 1975, the Social Security Administration notified Kiernan that because his military service was creditable under the Railroad Retirement Act, the Secretary could not apply any of his military service toward his social security earning requirements, that he was not eligible for social security disability benefits, and that he had been overpaid by approximately $13,500.00. (R. 23). Kiernan requested a hearing on this matter before an Administrative Law Judge (ALJ), a hearing was held, and the ALJ ruled in Kiernan's favor. (R. 49–58).

The Board then requested that the Appeals Council of the Social Security Administration reopen the case (R. 37), it did so (R. 36), and it reversed in favor of the Social Security Administration. (R. 30–35). Kiernan then appealed the decision of the Appeals Council to the United States District Court of Kansas which affirmed the decision, refusing to address the substantive issue and stating that Kiernan's complaint lies with the Board, that principles of *res judicata* preclude collateral attack, and that the proper procedure for Kiernan is to exhaust administrative remedies within the Board, appeal from which is to the United States court of appeals for the appropriate judicial circuit. (R. 25).

Kiernan then appealed the initial decision of the Board of Retirement Claims (R. 17) to the Board and the Board's appeals referee found the appeal untimely. (R. 12–16, 8). Thereafter, Kiernan appealed from the decision of the appeals referee as to the timeliness of his original appeal to the Board, the Board found that within the time limitations of the Board's appellate process Kiernan had indicated an intent to appeal, and then on the merits the Board held that Kiernan could not split his military service time to qualify for benefits under both the Social Security and Railroad Retirement Acts. (R. 2–3). From that holding Kiernan petitions this court for review.

■ The sole issue raised by Kiernan's petition for review is whether the Board erred in holding that, as a matter of law, he was not entitled to split military service time to qualify for benefits under both the Railroad Retirement Act and the Social Security Act.[3]

---

3. In his docketing statement, Kiernan also complained that the Board erred by not affording him an evidentiary hearing. In this court Kiernan's brief focuses on the legal question of the propriety of splitting military service in his circumstances and does not again mention nor argue the evidentiary hearing point and we feel we need not address it. We do note, however, that where there are no disputed issues of fact to be decided, as here, and the record provides adequate information to make a determination as to the merits of the claims, no evidentiary hearing is required. *See e.g., Cerro Wire & Cable Co. v. Federal Energy Regulatory Com-*

## II

The Railroad Retirement Act of 1937, as amended, 45 U.S.C.A. § 228a *et seq.* (1974), was superseded by the Railroad Retirement Act of 1974, 45 U.S.C.A. § 231 *et seq.*, effective January 1, 1975. However, since the relevant events predate the effective date of the 1974 Act, we discuss principally the 1937 Act. *Kurka v. United States Railroad Retirement Board,* 615 F.2d 246, 248 (5th Cir.).[4]

Kiernan contends that he is entitled to an annuity under the 1937 Railroad Retirement Act based upon his military service *prior* to January 1, 1957 being included as railroad "service" for purposes of satisfying the requirement of "ten years of service" under 45 U.S.C.A. § 228b(a).[5] He further says that he is entitled to Social Security disability benefits based upon his military employment *subsequent* to January 1, 1957.[6] Kiernan argues that neither the 1937 Railroad Retirement Act nor the Social Security Act explicitly or implicitly precludes him from splitting his military service to obtain benefits under both Acts and he claims that the 1937 Act indicates, in several places,

that dual benefits were contemplated by Congress.

The Board's decision incorporates by reference an opinion of its general counsel which takes the position that the splitting of continuous periods of military service is implicitly proscribed in both the Railroad Retirement Act of 1937 and the Social Security Act (R. 3, 5) and that military service which follows railroad employment must be treated "as a unit" under one Act or the other. (R. 5–6). Specifically, the Board concludes that Kiernan "cannot be given credit under the Railroad Retirement Act for a portion only of his military service from 1951 to 1970 so that he might be given credit under the Social Security Act for the remainder of that period." (R. 3).

 Contrary to the Board's construction, it is clear that under the 1937 Act and the Social Security Act, benefits under both systems were payable to the same individual prior to the 1974 supersession of the 1937 Railroad Retirement Act. Indeed, the Railroad Retirement Act of 1974, successor to the 1937 Act, was designed to phase out such awards of both benefits.[7] Under the

*mission,* 677 F.2d 124, 128–29 (D.C.Cir.); *McCulloch Interstate Gas Corp. v. Federal Power Commission,* 536 F.2d 910, 913 (10th Cir.); *Citizens for Allegan County, Inc. v. Federal Power Commission,* 414 F.2d 1125, 1128 (D.C.Cir.).

4. Both parties agree that the 1937 Act is controlling.

5. See note 8, *infra,* and 45 U.S.C.A. § 228c–1(c) allowing specified periods of military service to be creditable as railroad "service" time.

6. Prior to January 1, 1957, military service was not "employment" for purposes of the Social Security Act. That Act was amended effective January 1, 1957, so that "service performed after December 1956 by an individual as a member of a uniformed service on active duty" is employment. *See* 42 U.S.C.A. § 410(*l*)(1). It is because of this amendment that Kiernan initially split his Railroad Retirement and Social Security claims based on pre-1957 and post-1957 military service.

7. The Railroad Retirement system was reinsured with the Social Security system in 1951. Under this system of financial interchange

 the Railroad Retirement System pays to the Social Security System each year an amount

equal to the taxes which would have been paid by all railroad employees, and by the railroads, if railroad service were service covered under the Social Security Act. The Social Security System, on the other hand, transfers to the Railroad Retirement System each year an amount equal to the total of Social Security benefits which would have been paid to all retired railroad employees, their dependents, and survivors if all railroad service of the employees since 1936 had been covered under the Social Security Act . . . .

 The Social Security Act prohibits payment of multiple benefits to any individual under that Act. For this reason, whenever an individual receiving Railroad Retirement benefits also qualifies for Social Security benefits, the amounts paid to the Railroad Retirement System under financial interchange on account of that individual are reduced by the total of the Social Security benefits which that individual receives . . . .

 . . . [The Social Security Act] grants proportionately greater benefits to persons with relatively short periods of covered service and relatively low wages. In computing the amounts to be transferred to the Railroad Retirement System under financial interchange arising out of service of any individual employee, the amounts to be transferred

former system, "individuals fully insured under the Railroad Retirement system and the Social Security system were entitled to benefits under both. The 1974 Act established a system to phase out this practice." *Gebbie v. United States Railroad Retirement Board,* 631 F.2d 512, 513 (7th Cir.). If, however, an individual already had a "vested right" to both a railroad retirement annuity and Social Security benefits, that individual is permitted to receive benefits computed under both systems, his rights being unaffected by the 1974 Act's proscription of dual benefits. *See* S.Rep. No. 93–1163, 93rd Cong., *reprinted in* [1974] U.S. Code Cong. & Ad.News 5702, 5702 and 5708; [1976] 1 Unempl.Ins.Rep. (CCH) ¶ 12,513; *Gebbie, supra,* 631 F.2d at 515. We turn now to the consideration of the 1937 Act and our narrow question as to whether under it, one in Kiernan's circumstances was entitled to qualify for benefits under both Acts by a division of his military service time.

### III

Although the Board's primary contention is that the splitting of military service is not permissible, it further argues that all of Kiernan's military service is "creditable" toward railroad retirement since such ser-

vice was rendered during a period of national emergency, citing 42 U.S.C.A. § 410(*l*)(1) and (4)(A). The Board concludes that if his military service is "creditable" under the Railroad Retirement Act, then it cannot be claimed under the Social Security Act. (Brief of Respondent at 11–12, 16, 18–19). We must agree with this narrow contention of the Board and on that basis we uphold the Board's decision.

We are satisfied that Kiernan complied with all the prerequisites for entitlement to a railroad retirement annuity.[8] He had in excess of 120 months of creditable service, and his creditable military service was immediately preceded by service to an employer to which service is otherwise creditable under the Act. 45 U.S.C.A. § 228c–1(f). In order for military service to be creditable under the Railroad Retirement Act, it must be service rendered during a "war service period." 45 U.S.C.A. § 228c–1(a) and (c). A "war service period" is defined in § 228c–1(c) as follows:

(c) For the purpose of this section and section 202 of the Act of June 24, 1937, chapter 382, as amended, a "war service period" shall mean (1) any war period, or (2) with respect to any particular individual, any period during which such individual (i) having been in military service at

---

are computed on the basis of both his railroad employment and his non-railroad employment. When that individual then begins to draw benefits from the Social Security System based upon his non-railroad employment, the amounts by which the financial interchange reimbursement are reduced are disproportionate to the individual's total employment, railroad and nonrailroad.

S.Rep. No. 93–1163, 93rd Cong., *reprinted in* [1974] U.S.Code Cong. & Ad.News 5702 at 5703–04. The Senate Report went on to state that (*id.* at 5708):

the railroad employees are therefore already benefitting under the Social Security Act, and to permit future accruals of Social Security benefits in addition to the Railroad Retirement benefits computed under existing law would permit these employees to receive, in effect, a 'double dip' out of the railroad retirement fund and the social security fund.

In 1953, approximately 15 percent of railroad retirement beneficiaries were also entitled to Social Security benefits and, as a result of liberalized eligibility for social security benefits and the repeal of restrictions on railroad retire-

ment benefits, approximately 40 percent of railroad retirement beneficiaries were also entitled to Social Security benefits by 1974. *Id.* at 5709.

**8.** Requirements for entitlement to annuities under the 1937 Act were spelled out in 45 U.S. C.A. § 228b(a), which provided in part:

(a) The following-described individuals, if they shall have been employees on or after the enactment date, *and shall have completed ten years of service, shall,* subject to the conditions set forth in subsection (b)–(d) of this section, *be eligible for annuities* after they shall have ceased to render compensated service to any person whether or not an employer as defined in section 228(a) of this title (but with the right to engage in other employment to the extent not prohibited by subsection (d) of this section):

1. Individuals who on or after the enactment date shall be sixty-five years of age or over. . . .

(Emphasis added).

the end of a war period, was required to continue in military service, or (ii) was required by call of the President, or by any Act of Congress or regulation, order, or proclamation pursuant thereto, to enter and continue in military service, *or (3) any period after September 7, 1939, with respect to which a state of national emergency was duly declared to exist which requires a strengthening of the national defense.* (Emphasis added).

■ Neither legislative definition nor court construction stake out the limits of the disjunctive framework of § 228c–1(c) quoted above. It is appropriate to interpret the words in accordance with their ordinary, everyday meaning. *United States v. State of New Mexico,* 536 F.2d 1324, 1327–28 (10th Cir.); 2 Sutherland on Statutory Construction § 4919 (3d ed.). Here, use of the disjunctive "or" between the three meanings of "war service period" indicates that should the circumstances of any of the three definitions of "war service period" be satisfied as to the military service of an individual, then that service is "creditable" under the Railroad Retirement Act of 1937 for the purpose of determining eligibility for and computing an annuity. If we consider only § 228c–1(c) parts (1) and (2) with respect to Kiernan's 1951–70 military service, his service creditable to railroad retirement would cease, as originally declared by the Board, at the end of June 1954. This would follow since the "war period" as set forth in part (1) ceased by June 1954 when Kiernan's one term commitment to the Army ended [9] and part (2) would similarly apply only until June of 1954 since at that time, the end of his enlistment period, he was not *required* to enter or continue in military service.[10]

■ However, part (3) of § 228c–1(c) in clear terms extends the definition of "war service period" to include "any period after September 7, 1939" with respect to which a national emergency was declared which required a strengthening of the national defense. Therefore, military service after September 7, 1939 during such a period of national emergency which required a strengthening of the national defense is service during a "war service period" and creditable as railroad service under the Railroad Retirement Act of 1937. On December 16, 1950, during the Korean War, such a period of national emergency was declared to exist by President Truman. The proclamation itself declared that the national emergency "requires that the military, naval, air, and civilian defenses of this country be strengthened as speedily as possible . . . ." *Public Papers of the Presidents of the United States,* Harry S. Truman, 746–47 (1965).[11] This period of national emergency was in effect until September 15, 1978, well after Kiernan's retirement from military service in 1970.[12]

---

9. "War period" is defined in § 228c–1(d) as follows:

> For the purpose of this section, a "war period" shall be deemed to have begun on whichever of the following dates is the earliest: (1) the date on which the Congress of the United States declared war; or (2) the date as of which the Congress of the United States declared that a state of war has existed; or (3) the date on which war was declared by one or more foreign states against the United States; or (4) the date on which any part of the United States or any territory under its jurisdiction was invaded or attacked by any armed force of one or more foreign states; or (5) the date on which the United States engaged in armed hostilities for the purpose of preserving the Union or of maintaining in any State of the Union a republican form of government.

10. Kiernan's service after June of 1954 was voluntary.

11. *See* appendix to this opinion for the complete text of the proclamation.

12. The national emergency declared by this 1950 proclamation was terminated by Congress on September 15, 1978. Pub.L. 94–412, Title I, § 101, 90 Stat. 1255, 50 U.S.C.A. § 1601. Indeed, the mandate of the committee that initiated the National Emergencies Act, 50 U.S.C.A. § 1601 *et seq.,* was

> "to conduct a study and investigation with respect to the matter of terminating the national emergency proclaimed by the President of the United States on December 16, 1950, as announced in Presidential Proclamation Numbered 2914, dated the same date."

S.Rep. No. 94–1168, 94th Cong., *reprinted in* [1976] U.S.Code Cong. & Ad.News 2288–89 and 2294.

Citing Pub.L. 881, Aug. 1, 1956, 70 Stat. 857, 870, 42 U.S.C. § 410(*l*)(1) and (4)(A) (1970), the Board then contends that military service after 1956 is not "employment" within the coverage of Social Security benefits if the service is creditable under the Railroad Retirement Act. Those sections of the Social Security Act provide as follows:

(*l*)(1) Except as provided in paragraph (4) of this subsection, the term "employment" shall, notwithstanding the provisions of subsection (a) of this section, include service performed after December 1956 by an individual as a member of a uniformed service on active duty; but such term shall not include any such service which is performed while on leave without pay.

\*　　\*　　\*　　\*　　\*　　\*

(4)(A) *Paragraph (1) of this subsection shall not apply in the case of any service, performed by an individual as a member of a uniformed service, which is creditable under section 228c–1 of Title 45. The Railroad Retirement Board shall notify the Secretary of Health, Education, and Welfare, as provided in section 228c–1(p)(2) of Title 45, with respect to all such service which is so creditable.* (Emphasis added).

Parallel amendments were made to the Railroad Retirement Act of 1937 for the Board to report "creditable" military service by Pub.L. 881, 70 Stat. 857, 876, 45 U.S.C. § 228c–1(n)(2), which provided:

(2) In any case where an individual has completed ten or more years of service and such years of service include any military service rendered after December 1956, the Board shall as promptly as is practicable (A) notify the Secretary of Health, Education, and Welfare that such military service is creditable under this section and (B) specify the period or periods of the military service rendered after December 1956 which is so creditable.

In view of our conclusion as to the creditability of Kiernan's 1951–70 military service under the Railroad Retirement Act, the above-quoted sections from the Social Security Act are dispositive. Since all of Kiernan's service from 1951–70 was during the declared period of national emergency, it is "creditable" under the 1937 Railroad Retirement Act. We must conclude that, in these circumstances, Kiernan's entitlement is confined to his annuity under the Railroad Retirement Act of 1937 since he is barred by 42 U.S.C.A. § 410(*l*)(4)(A) from obtaining benefits under the Social Security Act based on his military service from January 1, 1957, on.[13] Accordingly, while we do not sustain the Board's decision on the basis of its position that "splitting" of military service is not permissible, we must uphold the result reached by the Board in this case because all of Kiernan's service time in question was during the "war service period" of the declared national emergency, it was "creditable" under the 1937 Railroad Retirement Act, and it may not be

We note that Kiernan's first period of military service (October 1944 through December 1946) is not at issue as both parties agree that it is creditable toward railroad retirement annuities.

13. As noted, in February of 1975 the Social Security Administration notified Kiernan that he had been overpaid by approximately $13,500.00 since none of his military service could be applied toward social security earnings requirements. (R. 23). Though the issue of whether Kiernan must repay any or a part of this amount is not before us, we feel it is appropriate to note that our holding should not be construed as approving any claim for recovery of past payments.

In the opinion of the United States District Court of Kansas, discussed in Part I, the judge noted equities favoring Kiernan and expressed the hope they would be weighed when the Secretary considers the possibility of waiver of overpayment recovery. (R. 27–28). The ALJ also noted the considerable administrative problems and burdens visited on Kiernan and his lack of fault in the inception or receipt of railroad benefits. (R. 55). His lack of fault and the questions whether recovery would be against equity and good conscience, or would defeat the purpose of the Act, are proper factors to consider in determining whether recovery of any overpayments, at this time, should or should not be sought. *See e.g. Romero v. Harris,* 675 F.2d 1100, 1102–06 (10th Cir.); *Morgan v. Finch,* 423 F.2d 551, 553 (6th Cir.).

included as "employment" under the Social Security Act.

AFFIRMED.

## APPENDIX

## PROCLAMATION 2914: PROCLAIMING THE EXISTENCE OF A NATIONAL EMERGENCY. December 16, 1950

*By the President of the United States of America a Proclamation*

WHEREAS recent events in Korea and elsewhere constitute a grave threat to the peace of the world and imperil the efforts of this country and those of the United Nations to prevent aggression and armed conflict; and

WHEREAS world conquest by communist imperialism is the goal of the forces of aggression that have been loosed upon the world; and

WHEREAS, if the goal of communist imperialism were to be achieved, the people of this country would no longer enjoy the full and rich life they have with God's help built for themselves and their children; they would no longer enjoy the blessings of the freedom of worshipping as they severally choose, the freedom of reading and listening to what they choose, the right of free speech including the right to criticize their Government, the right to choose those who conduct their Government, the right to engage freely in collective bargaining, the right to engage freely in their own business enterprises, and the many other freedoms and rights which are a part of our way of life; and

*WHEREAS the increasing menace of the forces of communist aggression requires that the national defense of the United States be strengthened as speedily as possible:*

*NOW, THEREFORE, I HARRY S TRUMAN, President of the United States of America, do proclaim the existence of a national emergency, which requires that the military, naval, air, and civilian defenses of this country be strengthened as speedily as possible to the end that we may be able to repel any and all threats against our national security and to fulfill our responsibilities in the efforts being made through the United Nations and otherwise to bring about lasting peace.*

I summon all citizens to make a united effort for the security and well-being of our beloved country and to place its needs foremost in thought and action that the full moral and material strength of the Nation may be readied for the dangers which threaten us.

I summon our farmers, our workers in industry, and our businessmen to make a mighty production effort to meet the defense requirements of the Nation and to this end to eliminate all waste and inefficiency and to subordinate all lesser interests to the common good.

I summon every person and every community to make, with a spirit of neighborliness, whatever sacrifices are necessary for the welfare of the Nation.

I summon all State and local leaders and officials to cooperate fully with the military and civilian defense agencies of the United States in the national defense program.

I summon all citizens to be loyal to the principles upon which our Nation is founded, to keep faith with our friends and allies, and to be firm in our devotion to the peaceful purposes for which the United Nations was founded.

I am confident that we will meet the dangers that confront us with courage and determination, strong in the faith that we can thereby "secure the Blessings of Liberty to ourselves and our Posterity."

IN WITNESS WHEREOF, I have hereunto set my hand and caused the Seal of the United States of America to be affixed.

DONE at the City of Washington this sixteenth day of [seal] December in the year of our Lord, nineteen hundred and fifty, and of the Independence of the United States of America the one hundred and seventy-fifth.

### HARRY S. TRUMAN

By the President:
 Dean Acheson
 Secretary of State

(Emphasis Added)

Public Papers of the Presidents of the United States, Harry S. Truman, 746–47 (1965).