**Edward H. SPRAIC, Petitioner,**

v.

**UNITED STATES RAILROAD RETIRE-MENT BOARD, Respondent.**

**No. 83–7908.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1984.

Decided June 26, 1984.

Gill DeFord, Nat. Senior Citizens Law Center, Los Angeles, Cal., for petitioner.

Thomas W. Sadler, U.S. R.R. Retirement Bd., Chicago, Ill., for respondent.

Before WRIGHT, FERGUSON, and REINHARDT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Spraic challenges the decision of the Railroad Retirement Board (Board) denying him dual benefits under the Railroad Retirement and Social Security Acts. He claims the decision rests on a faulty interpretation of section 3(h)(6) of the Railroad Retirement Act, 45 U.S.C. § 231b(h)(6). Alternatively, he argues that, as interpreted, the statute denies him due process and equal protection of the laws.

Two other circuits, the District of Columbia Circuit and the Seventh Circuit, have upheld the Board's interpretation of the statute against similar challenges. *Givens v. United States Railroad Retirement Board*, 720 F.2d 196 (D.C.Cir.1983), *petition for cert. filed*, 52 U.S.L.W. 3722 (U.S. Mar. 16, 1984); *Frock v. United States Railroad Retirement Board*, 685 F.2d 1041 (7th Cir.1982), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983). We agree with them.

FACTS AND PROCEDURAL BACKGROUND

This case concerns the overlap of the Railroad Retirement and Social Security systems. Prior to 1974, retirees who qualified under both Acts were entitled to dual benefits. Congress determined that these payments threatened the solvency of the Railroad Retirement System. *Railroad Retirement Board v. Fritz*, 449 U.S. 166, 168–69 & n. 2, 101 S.Ct. 453, 456 & n. 2, 66 L.Ed.2d 368 (1980).

The Railroad Retirement Act of 1974 was passed, in part, to meet this financial burden. *Givens*, 720 F.2d at 198. Section 3(m) of the Act, 45 U.S.C. § 231b(m), reduces railroad retirement benefits by any amount received under the Social Security Act (SSA). Section 3(h), 45 U.S.C. § 231b(h), restores dual benefits for retirees who meet certain work-related criteria and who would have been entitled to dual benefits under the SSA as in effect on

December 31, 1974. *See Fritz,* 449 U.S. at 170–73, 101 S.Ct. at 457–58.

Sections 3(h)(3) and (4) preserve dual benefits for railroad workers who would have received *spousal* benefits under the 1974 SSA. As written, and as administered in 1974, male retirees could receive spousal benefits only if they could show that they were dependent on their wives' earnings. Female retirees, on the other hand, could automatically receive spousal benefits.

The Supreme Court held that this distinction was unconstitutional sex discrimination in *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). In response to *Goldfarb,* the Board began to award spousal benefits to male railroad retirees. It determined, however, that these benefits were subject to offset because they were not part of the SSA "as in effect on December 31, 1974." The Board used the unconstitutional dependency provisions of the SSA to determine which retirees were entitled to dual benefits.

The Seventh Circuit invalidated this interpretation of sections 3(h)(3) and (4) in *Gebbie v. United States Railroad Retirement Board,* 631 F.2d 512 (7th Cir.1980). It held that the 1974 SSA did not include the unconstitutional dependency requirements because *Goldfarb* was "merely a statement of what the law has always been." *Id.* at 516. It required the Board to pay dual benefits without regard to the dependency provisions.

The Board responded on two fronts. First, it announced that it would not acquiesce in the *Gebbie* holding, despite the nation-wide jurisdiction of the Seventh Circuit. *See* 45 U.S.C. §§ 231g, 355(f) (allowing review of Board's decision in circuit where petitioner resides, D.C. Circuit, or Seventh Circuit). Although the Board did not appeal *Gebbie* or oppose on substantive grounds petitions for review based on *Gebbie,* it refused to apply it to pending administrative cases.

Second, the Board convinced Congress to address the situation in the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357. This Act added section 3(h)(6) to the Railroad Retirement Act, 45 U.S.C. § 231b(h)(6), which states:

> No amount shall be payable to an individual under subdivision (3) or (4) of this subsection *unless the entitlement of such individual* to such amount *had been determined prior to August 13, 1981.*

(emphasis added). The legislative history of section 3(h)(6) makes clear that it was intended to eliminate future awards of dual benefits based on *Gebbie.* H.R.Rep. No. 97–208, 97th Cong., 1st Sess. 863, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 1010, 1225.

Spraic applied for railroad retirement benefits on July 31, 1981, two weeks before the effective date of section 3(h)(6). On September 1, 1981, the Board awarded him a railroad retirement annuity and widower's benefits for his deceased wife's earnings under the SSA. It determined, however, that he was not entitled to dual benefits because his eligibility had not been *determined* before section 3(h)(6) became operative. Spraic appealed to a hearing officer who affirmed the denial of dual benefits. The decision was affirmed by the full Board.

ANALYSIS

A. *The Board Correctly Interpreted Section 3(h)(6) to Deny Spraic Dual Benefits.*

The initial question is whether Congress intended to deny dual benefits to retirees in Spraic's position when it enacted Section 3(h)(6).

[I]n a case of first impression, the courts look to the traditional signposts of statutory interpretation: first, the language of the statute itself; and second, its legislative history and the interpretation given by its administering agency, both as guides to the intent of Congress in enacting the legislation.

*Donovan v. Southern California Gas Co.,* 715 F.2d 1405, 1407 (9th Cir.1983).

Spraic concedes that the literal meaning of section 3(h)(6) supports the Board's position. The legislative history and agency

interpretation are equally unfavorable to his case. The conference report explained that section 3(h)(6) was intended "to cut off windfall awards in all cases where the processing has, *for whatever reason,* not been completed and the determinations have not been made." 1981 U.S.Code & Ad.News at 1225 (emphasis added).

Moreover, the Board's contemporaneous interpretation of Section 3(h)(6) deserves deference "on the theory that the agency entrusted with the administration of the statute is likely to be well informed about the intent of Congress in enacting it." *Donovan v. Southern California Gas Co.,* 715 F.2d at 1408.

Spraic argues, however, that a literal interpretation of Section 3(h)(6) would reward the Board's failure to follow controlling legal precedent. He contends that the Board's non-acquiescence in *Gebbie* violated established principles of separation of powers. *See Lopez v. Heckler,* 725 F.2d 1489, 1497 & n. 5 (9th Cir.1984).

As a threshold matter, we agree that the Board's non-acquiescence in *Gebbie* was improper. *Gebbie* was an interpretation of a statute the Board was charged to "faithfully execute" by a federal court of nationwide jurisdiction. *See Lopez,* 725 F.2d at 1497 n. 5. "It is, emphatically, the province and duty of the judicial department, to say what the law is," *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

■ An agency is bound to follow precedent established by an unappealed decision of a circuit court on any matter within that court's jurisdiction. *Lopez,* 725 F.2d at 1497 n. 5; *Hillhouse v. Harris,* 715 F.2d 428, 430 (8th Cir.1983) (dicta); *Ithaca College v. NLRB,* 623 F.2d 224, 228 (2d Cir.), *cert. denied,* 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980).

■ The general principle that courts have supreme authority "to say what the law is" does not disappear when a court has national jurisdiction over certain types of claims. Logically, its authority depends upon its statutory jurisdiction, not its territorial boundaries. *See Califano v. Yamasaki,* 442 U.S. 682, 702–03, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979). Because the Seventh Circuit has nationwide jurisdiction over railroad retirement claims, the Board should have appealed *Gebbie* or applied it to pending cases. *But see Givens,* 720 F.2d at 200 (Board was not required to follow *Gebbie*); *Frock,* 685 F.2d at 1046.

■ Nevertheless, the lawfulness or unlawfulness of the Board's non-acquiescence in *Gebbie* has little relevance to our task here. We must interpret section 3(h)(6) as it was written. The language and legislative history of the section show it was intended to overrule *Gebbie* for all cases where, for whatever reason, the retiree had not yet been awarded dual benefits.

Even if the Board had followed *Gebbie,* it is extremely unlikely that it would have reached a decision on Spraic's application in the two weeks available before section 3(h)(6) became law. His quarrel is with Congress, not the Board.

Spraic relies on the principle that courts should construe statutes to avoid constitutional questions. *See, e.g., Yamasaki,* 442 U.S. at 693, 99 S.Ct. at 2553. As the Supreme Court recently cautioned, however, this canon does not "license a court to usurp the policy-making and legislative functions of duly-elected representatives." *Heckler v. Matthews,* —— U.S. ——, 104 S.Ct. 1387, 1396, 79 L.Ed.2d 646 (1984).

■ When language and legislative history clearly show Congress's intent, we lack authority to rewrite a statute to avoid possible constitutional problems. *Id.* *Cf. Webb v. Schweiker,* 701 F.2d 81, 82 (9th Cir.1983), *vacated in light of Matthews,* —— U.S. ——, 104 S.Ct. 1583, 80 L.Ed.2d 117 (1984).

B. *Section 3(h)(6) Does not Deny Spraic Due Process or Equal Protection of the Law.*

■ Spraic argues that he was denied due process because the Board did not determine his eligibility for dual benefits before August 13, 1981. He does not claim

that there was unconstitutional delay involved in the Board's failure to decide his entitlement in the two weeks between July 31 and August 13. *Compare Givens*, 720 F.2d at 201 (19 month delay between administrative appeal and decision held constitutional); *and Frock*, 685 F.2d at 1047 n. 13 (two year delay between application and final denial held constitutional); *with Kelly v. Railroad Retirement Board*, 625 F.2d 486 (3d Cir.1980) (45 month delay in processing disability claim violated due process). Rather, he claims he had a vested right to dual benefits which could not be negated through agency inaction.

Spraic depends on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). *Logan* held that a state could not deprive a claimant of a cause of action because its own agency failed to hold a hearing within a statutory time limit. *Id.* at 434, 102 S.Ct. at 1157.

*Logan* is irrelevant, however, because section 3(h)(6) did not require the Board to process claims within a certain time. *See Givens*, 720 F.2d at 201; *Frock*, 685 F.2d at 1047. Instead, it abrogated all claims which had not been favorably determined at the time the Act was passed.

Spraic cites private pension cases to support his argument that his dual benefits had "vested" upon retirement and could not be destroyed retroactively. *See Terpinas v. Seafarer's International Union of North America*, 722 F.2d 1445, 1447 (9th Cir.1984); *Music v. Western Conference of Teamsters Pension Trust Fund*, 712 F.2d 413, 419–20 (9th Cir.1983). These cases are fundamentally different, however, because most private pension benefits are contractual. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 575, 99 S.Ct. 802, 805, 59 L.Ed.2d 1 (1979).

In contrast, railroad and social security benefits "are not contractual and may be altered or even eliminated at anytime." *Fritz*, 449 U.S. at 174, 101 S.Ct. at 459. The railroad retiree, like the social security beneficiary, is dependent on Congress to continue providing benefits. *See Hisquier-do*, 439 U.S. at 575 & n. 6, 99 S.Ct. at 805 & n. 6.

Spraic also argues that section 3(h)(6) violates the equal protection component of the Fifth Amendment by discriminating between claimants solely on the basis of the agency's action or inaction on their claims. Again, he relies on *Logan*, where six justices indicated that depriving a claimant of a cause of action because the state agency failed to meet a statutory deadline violated equal protection. *See Logan*, 455 U.S. at 438, 102 S.Ct. at 1159 (separate opinion of Blackmun, J.); *id.* at 443, 102 S.Ct. at 1161 (Powell, J., concurring in judgment). As Justice Powell framed the issue: "The decision of the Illinois Supreme Court effectively created two classes of claimants: those whose claims were, and those whose claims were not, processed within the prescribed [time by the state agency]." *Id.* at 443, 102 S.Ct. at 1162. The concurring opinions in *Logan* indicated that this classification did not pass the "rational basis" test. *Id.* at 442, 444, 102 S.Ct. at 1161, 1162.

Section 3(h)(6) bears a superficial resemblance to the scheme invalidated in *Logan*. There is a great difference, however, between conditioning future benefits on agency action within a certain time, and eliminating benefits that have not been awarded prior to a statute's passage. Congress could have eliminated *all* dual benefits. *Fritz*, 449 U.S. at 174, 101 S.Ct. at 459; *Givens*, 720 F.2d at 202. Instead, it chose to protect the interests of retirees who had had their eligibility for dual benefits determined prior to the effective date of the act.

The Fifth Amendment only prohibits Congress from "withholding a non-contractual benefit under a social welfare program" when it relies upon "a patently arbitrary classification, utterly lacking in rational justification." *Goldfarb*, 430 U.S. at 210, 97 S.Ct. at 1028. Section 3(h)(6) is a rational measure, designed to eliminate dual benefits while protecting the reliance interests of those who have been already awarded them. *Givens*, 720 F.2d at 202; *Frock*, 685 F.2d at 1047. *See Mathews*, 104

S.Ct. at 1399. "Because Congress could have eliminated windfall benefits for all classes of employees, it is not constitutionally impermissible for Congress to have drawn lines between groups of employees for the purpose of phasing out those benefits." *Fritz*, 449 U.S. at 177, 101 S.Ct. at 460.

CONCLUSION:

The Board correctly applied section 3(h)(6) to deny dual benefits to Spraic. This denial does not violate any of his constitutional rights.

Because of our disposition of the substantive questions, we do not reach Spraic's request that we certify a class. *But see Burns v. United States Railroad Retirement Board*, 701 F.2d 189, 191–93 (D.C.Cir. 1983) (denying class certification in similar circumstance as inconsistent with appellate method of review).

AFFIRMED. PETITION FOR REVIEW DENIED.