In the Matter of TELEPROMPTER OF THE MOHAWK VALLEY, INC., Appellant, v JOHN PUMILIO, as Mayor of the Village of Frankfort, et al., Respondents.

Fourth Department, April 15, 1977

70

*George H. Getman* for appellant.

*John J. Bono* for respondents.

CARDAMONE, J. The question on this appeal is whether a municipality must order a public hearing and prepare formal findings of fact upon the request of a franchised cable television operator for an increase in rates charged to its subscribers. We find no such requirement.

Petitioner, Teleprompter of the Mohawk Valley, Inc. (Teleprompter) is successor-in-interest to Antenna Vision, Inc., which on June 1, 1964 was granted a 25-year franchise by the Village of Frankfort (village) to construct and operate a community antenna and closed circuit television system in the village. Paragraph 17 of the 1964 franchise agreement set forth initial installation and service rates and provides that

"[a]ny increase in rates shall be subject to review and approval by the Board of Trustees".

Following public hearings the village passed resolutions in December, 1970 and again in October, 1974 to amend the franchise agreement and to authorize rate increases over those originally provided. These rate increases were approved by the Cable Television Commissioner. In April, 1976 Teleprompter, citing increased operating costs, notified the eight municipalities in the area which it served, including the respondent Village of Frankfort and the commissioner, of its request for an additional rate increase and asked that public hearings be held. Following meetings held by the Mohawk Valley Mayors' Conference which were attended by the two members of the Frankfort Village Board, Teleprompter's request was denied. Teleprompter thereafter requested that the Village of Frankfort schedule a public hearing on the proposed rate increase. At a meeting held on June 17, 1976 the village board refused to discuss the factual merits of the requested rate increase or to schedule a public hearing and told petitioner that it could bring the matter up for review the following year.

Teleprompter thereupon commenced an article 78 proceeding to compel respondents to grant a public hearing on the rate increase and, upon completion of the hearing, to prepare formal findings of fact and to make a determination as to the amount of the rate increase, if any, to be granted. It further sought a temporary rate increase for service in the Village of Frankfort to be held in escrow pending a final rate determination by the New York State Commission on Cable Television. Special Term denied the relief petitioner sought finding that the franchise agreement provides for possible rate increases subject to review and approval by the board of trustees. Special Term also concluded that since there was no statutory provision nor a provision in the franchise agreement for the requested public hearing, respondent's refusal to hold a public hearing or to submit the controversy to the Commission on Cable Television under section 822 of the Executive Law constituted no denial of due process.

On this appeal Teleprompter contends that it has a substantive due process right to a fair and reasonable return on its investment and that such right must be implied in the franchise agreement. Petitioner further urges that in order to secure the substantive right to a fair and reasonable return it

must be accorded a full hearing before the board with appropriate formal findings of facts made at the conclusion of such a hearing. We cannot agree with petitioner's contentions.

The New York State Legislature established a Commission on Cable Television (Executive Law, art 28, eff Jan. 1, 1973). The Legislature determined that cable television operations are of State concern and while such operations must be subject to State overview, "they also must be protected from undue restraint and regulation" (Executive Law, § 811). Significantly, the statute provides that rates charged by a cable television company "shall be those specified in the franchise" (Executive Law, § 825, subd 1) and that "such rates may not be changed except by amendment of the franchise" (Executive Law, § 825, subd 2). The commission may prescribe rates for cable television service after public notice and opportunity for hearing only *"upon request by a municipality and cable television company* that the commission prescribe applicable rates, made in such a manner as the commission by regulation may prescribe and *certifying that they are unable to agree upon rates to include in any franchise or renewal thereof"* (Executive Law, § 825, subd 5, par [e]; emphasis supplied).

Thus, we conclude that the rates charged for cable television service are governed by the franchise. Such rates may only be changed by amendment of the franchise, unless both the municipality and the cable television company certify that they are unable to agree upon rates and request that the commission prescribe them. Further, in addition to municipal approval of the amendment to a franchise agreement, the person desiring such amendment shall also file an application with the commission (Executive Law, § 822, subds 1, 2). Since the municipality has not consented to amend the franchise to raise the rates and has not certified to the commission that it prescribe the rates, the commission is without authority to prescribe them. Therefore, even though Teleprompter did not itself make application to the commission for a rate increase before instituting this proceeding, it cannot be said on that account to have failed to exhaust its administrative remedies.

The question remains, however, whether Teleprompter, pursuant to the franchise agreement or via its alleged due process right to a reasonable rate of return, is entitled to demand a public hearing concerning its request for an increase in rates. The franchise agreement clearly states that "[a]ny increase in rates shall be subject to review and approval by the Board of

Trustees" and makes no provision that the board hold a public hearing or make formal findings of fact. There is no reason to treat the franchise agreement between the respondent municipality and Teleprompter other than as an ordinary contract (36 Am Jur 2d Franchises, p 778, § 51); see *Texarkana v Arkansas Gas Co.,* 306 US 188). Its duration and the rates to be charged were established by mutual agreement between the parties. Of course, where the rates of a regulated industry are fixed by a public authority, a right does exist to a fair return. However, the Commission on Cable Television is not a rate-making authority but, rather, a body that sets standards and oversees the operations of cable television in the State (Executive Law, §§ 811, 815, 816). There is no due process guarantee of a fair return on investment. Rates have not been made, determined or fixed by any body other than the parties to the franchise agreement. Both parties are thus bound by it. Having freely obligated itself to the agreement, Teleprompter may not now claim that it is being denied a fair rate of return on its investment. This is not to say that the cable television operator is never entitled to a public hearing. There are numerous instances in article 28 of the Executive Law where an opportunity to be heard is required (see, e.g., § 815, subd [2], par [a], cl [iii]; §§ 823; 824, subds 2, 3; § 825, subds 3, 5; § 827, subd 2). However, in the instant situation the franchise agreement controls and makes no provision for a hearing. The franchise expires on January 1, 1983 (Executive Law, § 825, subd 3) and if Teleprompter desires that the village review rate requests by conducting a public hearing and prepare formal findings it must so provide in any subsequent franchise agreement between the parties.

The judgment should be affirmed.

MARSH, P. J., MOULE, SIMONS and GOLDMAN, JJ., concur.

Judgment unanimously affirmed, without costs.