LIBERTY CABLE COMPANY, INC.; Sixty Sutton Corp.; Jack A. Veerman, Plaintiffs–Appellants,

v.

CITY OF NEW YORK; Ralph A. Balzano, Commissioner of Department of Information and Telecommunications, NYS Commission on Cable Television, William B. Finneran, Gerard D. DiMarco, Barbara T. Rochman, David F. Wilbur, and John Passidomo, Defendants–Appellees,

UNITED STATES of America, Time Warner Cable of New York City and Paragon Cable Manhattan, Defendants–Intervenors–Appellees.

No. 2034, Docket 95–6041.

United States Court of Appeals, Second Circuit.

Argued June 1, 1995.

Decided July 12, 1995.

Lloyd Constantine, New York City (Robert Begleiter, Leslie F. Spasser, Eliot Spitzer, Constantine & Partners, New York City, on the brief), for defendant-appellant Liberty Cable Co., Inc.

W. James MacNaughton, Woodbridge, NJ, submitted a brief for defendants-appellants Sixty Sutton Corp. and Veerman.

Timothy J. O'Shaughnessy, New York City (Paul A. Crotty, Corp. Counsel of City of N.Y., Kristin M. Helmers, New York City, on the brief), for defendants-appellees City of N.Y. and Balzano.

Marilyn T. Trautfield, Asst. Atty. Gen., New York City (Dennis C. Vacco, Atty. Gen., Jeanne Lahiff, Asst. Atty. Gen., on the brief), for defendants-appellees N.Y.S. Comm'n on Cable Television, Finneran, Di Marco, Rochman, Wilbur, and Passidomo.

Kathy S. Marks, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., Steven M. Haber, Asst. U.S. Atty., William E. Kennard, Gen. Counsel, Fed. Commun. Comm'n, Washington, DC, on the brief), for defendant-intervenor-appellee U.S.A.

Rowan D. Wilson, New York City (Stuart W. Gold, Cravath, Swaine & Moore, New York City, Martin J. Schwartz, Richard G. Primoff, Rubin Baum Levin Constant & Friedman, New York, NY, on the brief), for defendants-intervenors-appellees Time Warner Cable of N.Y.C., and Paragon Cable Manhattan.

Before: NEWMAN, Chief Judge, LUMBARD and JACOBS, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal by a television cable company from the denial of a motion for a preliminary injunction primarily concerns the extent of governmental obligations to develop franchising regulations for activities required to be licensed. Plaintiffs-appellants Liberty Cable Company, Inc. ("Liberty"), Sixty Sutton Corporation, and Jack A. Veerman appeal from the March 14, 1995, order of the District Court for the Southern District of New York (Loretta A. Preska, Judge), dismissing their complaint in part and denying their motion for a preliminary injunction. Defendants-appellees are the City of New York (the "City") and agencies and officials of the City and of the State of New York. Because we agree with the District Court that a governmental entity satisfies its licensing obligations by acting with reasonable expedition to develop rules for obtaining licenses in a specialized, technical field, we affirm the denial of a preliminary injunction on the basis of the comprehensive and carefully rea-

soned opinion of Judge Preska. *See* 893 F.Supp. 191 (S.D.N.Y.1995).

Liberty operates what are known as "non-common" cable systems in New York City. A non-common cable system is a Satellite Master Antenna Television ("SMATV") facility that does not use public property or rights of way to provide cable services but connects by hard wire two or more multi-unit dwellings that are not commonly owned, controlled, or managed. Non-common systems fall within the definition of a "cable system," *see* 47 U.S.C. § 522(7), and are thus subject to all the requirements that the Cable Communications Policy Act of 1984, 47 U.S.C. § 521 *et seq.* (1988 & Supp. V 1993) (the "Cable Act") imposes on cable operators.[1] The plaintiffs-appellants' complaint sought a declaratory judgment that certain provisions of the Cable Act were unconstitutional on their face and as applied. Their motion for a preliminary injunction sought to enjoin appellees from enforcing the Cable Act so as to require Liberty either to cease providing service to subscribers in its non-common systems or to obtain a franchise from the City. Appellants also attempted to enjoin a December 9, 1994, standstill order issued by appellee New York State Commission on Cable Television ("NYSCCT"), prohibiting Liberty from hooking up any new non-common systems.

Appellants alleged that 47 U.S.C. § 522(7) (defining "cable system") and 47 U.S.C. § 541(b)(1) (stating that cable operators may not provide cable services without a franchise) as well as the state standstill order violated their First Amendment, due process, and equal protection rights. Time Warner Cable of New York City and Paragon Cable Manhattan, franchised competitors of Liberty, intervened seeking dismissal of the complaint. Judge Preska held that appellants' First Amendment claims were unripe under *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), and *Beach Communications, Inc. v. F.C.C.*, 959 F.2d 975 (D.C.Cir.1992) (finding petitioners' facial challenge to the same pro-

visions of the Cable Act at issue here not ripe for adjudication). She further held that their due process claims were unripe. Though the District Court found that appellants' equal protection challenges were ripe, it nonetheless denied the preliminary injunction, concluding that Liberty and its subscribers could not demonstrate either a "likelihood of success on the merits" or "irreparable harm," *see Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).

■ We affirm on Judge Preska's opinion and write only to add a few additional words of clarification on the issue of whether Liberty is being denied due process. Liberty argued to the District Court that its denial of due process was based in part on the fact that federal and state laws require it to obtain a franchise from the local franchising authority, *see* 47 U.S.C. § 541(b)(1); N.Y. Executive Law art. 28, § 819(1) (McKinney 1982), yet no franchise procedure is currently available in New York City for cable operators, like Liberty, who operate non-common systems. Thus, Liberty contends, the fact that it is required to obtain a franchise but cannot now apply for a franchise is a "Catch-22" predicament that constitutes a denial of its property without due process.

In ruling that Liberty's due process claims were not yet ripe for adjudication, the District Court stated that "a procedure is in place through which Liberty can obtain a franchise." Though this statement is not literally correct, since New York City does not yet have a final procedure for the granting of so-called "off-street" franchises, we understand the District Court to have been referring to the fact that the City is presently *creating* an off-street franchise procedure through a rulemaking proceeding. The City began that proceeding in February 1995, less than four months after Liberty first applied for its franchise on October 28, 1994. Liberty contends that the City may not require franchises for non-common systems without having a licensing procedure for such sys-

---

1. "Non-common" cable systems are to be distinguished from "common" cable systems, which are SMATV facilities that connect by wire only buildings under common ownership, control, or management. Common cable systems are not cable systems within the meaning of the Cable Act and are not subject to any of the requirements imposed under that statute.

tems already in place. In the circumstances of this case, we disagree.

Liberty is apparently the first cable operator ever to have approached the City about acquiring a franchise for a non-common system. Such systems are not in widespread use, and we were informed at oral argument that no city currently has franchising regulations in place for such systems. In a technical field like cable television, a governmental entity, authorized to license a variety of cable systems, is not required to anticipate all of the different types of service that cable operators might wish to render and keep licensing regulations on the shelf for every variety of applicant that might request a franchise. The City satisfied its due process obligations by acting with reasonable dispatch to institute a rulemaking proceeding upon receipt of Liberty's application. So long as the City does not unduly delay the completion of the rulemaking proceeding and, upon its completion, acts with reasonable diligence in processing Liberty's franchise application, Liberty will have received all the process that is due.

On the present record, there is no evidence of unreasonable administrative delay. Liberty first applied for an off-street franchise in October 1994. The City published a notice of proposed rulemaking on February 24, 1995, received public comment on its proposed rules during a comment period that closed on April 3, 1995, held a public hearing on April 4, 1995, and is now in the process of formulating final rules—all within a span of nine months. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 342, 96 S.Ct. 893, 906–07, 47 L.Ed.2d 18 (1976) (greater than one-year delay for hearing on termination of disability benefits did not violate due process); *Ritter v. Cohen*, 797 F.2d 119, 124 (3d Cir.1986) (delay of 20 months in holding post-termination hearing not violative of due process); *Givens v. United States R.R. Retirement Board*, 720 F.2d 196, 201 (D.C.Cir.1983) (delay of 19 months in appeal of denial of railroad benefits not a denial of due process), *cert. denied*, 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984); *Frock v. United States R.R. Retirement Board*, 685 F.2d 1041, 1047 n. 13 (7th Cir. 1982) (delay of two years in processing application for railroad benefits did not violate due process), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983). Under the circumstances, Liberty is not being denied due process.

■ Furthermore, like any other member of the public, Liberty had the opportunity to participate in the City's rulemaking proceeding. Moreover, Liberty now has the chance to raise its constitutional claims before the NYSCCT and perhaps on judicial review. *See, e.g., Christ the King Regional High School v. Culvert*, 815 F.2d 219, 225 (2d Cir.) (constitutional issues may be decided in Article 78 proceeding under New York civil practice law), *cert. denied*, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987); *Teleprompter of Mohawk Valley, Inc. v. Pumilio*, 57 A.D.2d 69, 394 N.Y.S.2d 945 (4th Dept.1977). A party's due process rights are not violated when it may participate fully in an administrative agency proceeding and later seek state-court review. *See, e.g., Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 483–84, 102 S.Ct. 1883, 1898–99, 72 L.Ed.2d 262 (1982).

The order of the District Court is affirmed.